SKIDMORE vs. ROMAINE.

*In the matter of the Real Estate of* BENJAMIN ROMAINE, *deceased.*

WHERE necessaries are furnished to a person of weak or impaired capacity, and no fraud or imposition is practised, a debt is created which on his decease will be a charge against his estate; provided the articles furnished were suitable to his circumstances pecuniary and social, and to his ordinary mode and habit of living.

Where a creditor has sued the executors, and on their offer to permit a recovery for a certain sum, has taken judgment for that amount, the claim is liquidated, and he cannot recover a larger sum in a proceeding to sell the real estate of the deceased for the payment of his debts.

The personal estate is the primary fund for the payment of debts, and the measure of recovery against the realty cannot exceed that against the personalty, though it may be less.

On application to sell the real estate of the deceased for the payment of his debts, the devisees or heirs may set up the statute of limitations against the claims of creditors.

Whether, when a cause of action has accrued, and the statute commenced running, and the debtor dies within the six years, it is an answer to a plea of the statute, that by reason of litigation as to the probate an executor was not appointed until the six years had expired, and that suit was brought within a reasonable time after probate granted, *quære ?*

An application for the sale of real estate for the payment of debts is not, in a strict sense, an action. The term of eighteen months after the death of a testator or intestate forms no part of the time limited by law for the commencement of an action against his executors or administrators; and an action for the debts of the deceased cannot be brought against his heirs or devisees within three years from the time of granting letters.

Proceedings to compel the sale of the real estate for the payment of debts, cannot be instituted by a creditor until the executor or administrator has accounted; and an account cannot be compelled till the lapse of eighteen months after letters issued.

Where on the decease of the testator the statute of limitations had commenced to run against certain simple contract debts, and in consequence of a contest as to the probate, letters testamentary were not

granted until five years after, and the six years from the creation of the debt expired after letters were issued, but before the creditors could compel an account,—Held, that the claims were not barred by the statute of limitations.

In proceedings to sell the real estate for the payment of debts, it is competent for the heirs or devisees to show that the personal estate has not been applied to the payment of the debts: but the sale may be ordered by the Surrogate, if he has satisfactory evidence that the executor or administrator has proceeded with reasonable diligence in making such application.

Executors will not be required to sell leasehold premises, on which the testator has erected a private vault, in which he was interred, and in regard to which special directions were contained in the will,—before the real estate can be sold for the payment of debts.

Whether specific legatees, whose legacies are encroached upon for the payment of debts, are entitled to have the assets marshaled against devisees, *quære?*

Where the personal estate that had come to the hands of the executors was insufficient for the payment of all the creditors, and there were controverted questions between the legatees and devisees necessary to be determined before ascertaining whether the personal estate was sufficient to pay the debts, and the executors had in their hands rents of the real estate collected during the contest as to the probate,—Held, that the debts might be paid out of that fund; the legatees and devisees being left to the settlement of their respective rights and claims in a court of competent jurisdiction.

R. MOTT, W. BLISS, A. H. CORNING, R. BENNER, L. B. SHEPPARD,
C. H. SMITH, *for Creditors.*
W. ROMAINE, A. BOARDMAN, *for Executors.*
H. M. WESTERN, *for Devisees.*

THE SURROGATE.—Benjamin Romaine departed this life 31 January, 1844. A contest arose on the probate of his will and the codicils, which continued for several years, so that letters testamentary were not issued until 27 January, 1849. A collector was appointed 15 February, 1844. The executors having qualified, they were cited to account at the end of eighteen months by some of the creditors; and, it appearing that the personal estate was insufficient to pay the debts, application was made to mortgage, lease or sell the real estate for that purpose.

Most of the claims presented for my adjudication in

this proceeding, are for groceries, furniture, coal, merchandise, and other articles for household or domestic use ; and the evidence of sale, and delivery at the testator's residence, and on his order, is such as would ordinarily be sufficient to establish his liability. It was contended, however, that the testator was not at the time possessed of sufficient capacity to make a valid contract.

With several of these parties the deceased had been in the habit of trading many years ; and if his mind was impaired at the period of these particular transactions, there is, with perhaps one exception, no evidence of the fact being actually brought home to the knowledge of the claimants. But even a lunatic is liable for necessaries suitable to his degree or condition in life. (*Browne* vs. *Jodrell,* 3 *Car. & P.*, 30 ; *Baxter* vs. *The Earl of Portsmouth,* 2 *Car. & P.*, 178.) In *Wentworth* vs. *Tubb,* before Lord Lyndhurst, the creditor of a lunatic instituted suit for payment out of the real estate, there being no personal assets. The heir set up the lunacy ; and the Lord Chancellor held that " where necessaries are furnished to a lunatic, and no fraud or imposition is practised upon him by the party furnishing them, the lunatic is bound to pay for them as being a debt due from him to such party ; and if a debt upon his decease, his estate is chargeable with it." (1 *N. Y. Legal Observer,* 282.) That case is precisely in point, in many of its features, with the present one, except that I do not think the proof shows the testator to have been *non-compos,* or wholly deprived of reason, at the period these debts were contracted. It may very properly be said that his mind was impaired so as to make him the subject of imposition or undue influence. There is not enough to establish an absolute and entire incapacity to contract. But under either supposition, he was chargeable for necessaries suitable to his circumstances, pecuniary and domestic, his rank in life, and his ordinary mode or habit of living.

It appears that the testator's daughter, Mrs. Nichols,

and her children, resided with him previous to his decease. She went to Europe in October, 1842, and returned in September, 1843, at his request, to nurse and attend him. With her two sons she continued to reside at his house, during the period the debts in question were contracted. The testator being old and infirm, she managed his domestic affairs. Her husband being insolvent, her children were taken in charge by their grandfather, and were supported by him; they all, in fact, for the time being composed part of his household, and this seems to have been well known and understood in the family. These circumstances explain many items in some of the present demands, which evidently relate to articles procured for the use of the testator's daughter and her children. But, with a single exception, there is no proof that the parties who furnished the articles were cognizant of the particular use to which they were put, or had reason to suspect any thing improper. The goods were sold and delivered at the testator's residence, in the ordinary course of business, and, for the most part, by persons with whom he had previously dealt. The carpets and furniture were in actual use in his house, and formed part of his estate, at the time of his death. The coal, some of the clothing, and a large proportion of the groceries and provisions were in the strictest sense, necessaries. To hold, under such circumstances, without any evidence of fraud or imposition on the part of the vendors, that the deceased was not liable, would, in my judgment, be grossly inequitable. I must therefore find generally, in favor of all the demands except that of Buttle. Buttle was in the habit of seeing the testator frequently. His account contains many charges, for borrowed money, wines, cigars, &c., which, with his knowledge of the family of the testator and his condition, he should have hesitated to furnish. It is true that most of these items occur previous to 1 Nov., 1843, when a settlement was made, part of the account paid, and a note given for the balance. But that note forms part of the

present claim, and its consideration may be inquired into. Besides, Buttle brought suit against the executors, and on their offer under the code to permit a recovery for $750, consented to take judgment for that amount. He thus liquidated his claim against the personal estate at that sum ; and though the judgment is no evidence against the devisees, still it estops the judgment creditor, for it would be an anomaly to allow a greater debt against the real estate than can be demanded or has been established against the personal representatives. The personal estate is the primary fund, and the measure of recovery against the realty cannot exceed that against the personalty, though it may be less. Without going into particulars, I am satisfied that the amount for which Buttle consented to take judgment against the executors, was quite as much as he was entitled to, on a fair or even liberal adjustment of his account; and I shall therefore allow his claim at $750, with interest from the date of the judgment.

It is however insisted, on the part of some of the devisees, that all these demands are barred by the statute of limitations. The statute may be set up by the devisees. (2 *R. S.*, *3d ed.*, *p.* 165, § 13.) As against all the claims, except one, the statute had begun to run at the testator's death ; but for five years there was no representative of the estate, letters testamentary, in consequence of the probate being litigated, not having been issued till January 27, 1849. In *Rhodes* vs. *Smethurst*, 4 *Meeson & Welsby*, 42, it was held, after an elaborate argument in the Court of Exchequer, that when a cause of action has accrued and the statute commenced running, if the debtor dies within the six years, it is no answer to a plea of the statute, that by reason of litigation as to the probate, an executor was not appointed until the six years had expired, and that suit was brought within a reasonable time after probate granted. It is not necessary for me to express an

opinion on the point thus determined, there being another answer to the plea of the statute in this case.

The statute of limitations, in terms, applies only to *actions*, and requires the action to be brought within a certain period after the cause of action accrued. An application for the sale of real estate is in no strict sense an action, nor can the original cause of action against the deceased be said to *survive* against his heirs or devisees, as respects this peculiar form of proceeding. As an action proper, it survives only against the executor or administrator. In providing a statutory remedy for the sale of real estate for payment of debts, the proceeding is not likened at all to an action. Suits at law and in equity may be brought against the personal representatives or against the heirs or devisees, and these are proper actions. But the term of eighteen months after the death of any testator or intestate forms no part of the time limited by law for the commencement of an action against his executors or administrators (2 *R. S.*, *3d ed.*, *p.* 544, § 8); and an action for the debts of the deceased cannot be brought against his heirs or devisees, within three years from the time of granting letters. (2 *R. S.*, *3d ed.*, *p.* 171, § 57). It is obvious, therefore, that at the time this proceeding was instituted, an action against the executors would not have been barred by the statute, and that if the devisees were sued at law at this day, they could not successfully interpose the statute.

Again, the devisees cannot be made liable unless it shall appear that the personal assets of the deceased were insufficient to discharge his debts, or that after due proceedings before the Surrogate and at law, the creditor has been unable to collect his demand from the personal representatives; and it is incumbent on the creditor to establish these facts affirmatively (2 *R. S.*, *3d ed.*, *p.* 547, §§ 33, 36, 56, 59). But executors and administrators cannot be compelled to account until eighteen months after letters issued; and it is therefore entirely beyond the power of the creditor to

ascertain until the lapse of that time, the insufficiency of the personal estate. For this reason, the creditor is not clothed with the right to apply for the sale of the real estate until an account has been rendered ; and the result is, this proceeding cannot be instituted until eighteen months after the grant of letters (2 *R. S.*, 3d ed., *p.* 155, § 55, *page* 170, § 52). In January, 1849, when the executors of Mr. Romaine qualified, none of these debts were outlawed. The statute prohibited any resort to the real estate for the purpose of paying them until the expiration of eighteen months. It would be an extraordinary state of things if the time thus lost to the creditor by direct statutory prohibition should be counted against him, to the destruction of his claim. Laws are not to be construed in such a pernicious way, unless from stern necessity. As a general rule, when a temporary incapacity to sue grows out of a statutory provision, the time of such temporary disability should be excluded from the computation. (*Trecothick* vs. *Austin*, 4 *Mason*, *C. C. R.* 16. *Dowell* vs. *Webber*, 2 *Smedes and Marsh*, 452. *Montgomery* vs. *Hernandez*, 12 *Wheaton* 129 ; 2 *Martin*, *N. S.* 422). The creditors here, never had a right to proceed against the real estate until an accounting was had—that could not be had until eighteen months after letters granted—and here was a clear statutory suspension of the remedy from the testator's death to July, 1850, when the executors were called to account, and this proceeding was shortly after commenced.

If, therefore, this application is to be considered in itself as a *quasi* action, and the statute be directly applied to it, then either the cause of action never accrued against the devisees until eighteen months after letters granted, or in another view it was suspended for the period of eighteen months after probate, during which, though the estate was represented, the statute forbade the procedure.

The latter view is, I think, the true one, and harmonises with the provision that the period of eighteen months after the death of the testator or intestate shall be excluded

from the time limited for the commencement of actions against the executor or administrator. "There may be cases," say the Revisers, in recommending this section, "where there is no representative of a deceased person, against whom an action may be brought. It is but just, that during this period of suspense the creditor should not lose his rights, by having the statute of limitations attach on his demand. The term of eighteen months has been selected as a reasonable time, because the executor is allowed one year to settle the estate, and a short time should be added for the delay that may occur in the proving of a will or taking out letters." (3 *R. S.*, 2*d. ed.*, *p.* 751.)

The obvious design of the law has been, not to drive parties to an immediate action, to save the statute, when public policy requires a reasonable period for the adjustment of the estate. For the attainment of this end, eighteen months were allowed the executor or administrator to render his account; eighteen months were allowed the creditor to bring his action, without having the statute run against him ; and eighteen months were allowed heirs or devisees, before they could be called upon to pay the debts out of the real estate. All these provisions are consistent, harmonious and systematic, and point to a general plan, the prominent feature of which is the period of eighteen months, during which the estate might be quietly left in process of settlement, and at the same time the rights of creditors be unimpaired by the lapse of the time during which they were thus suspended. I must therefore determine that none of the claims in question are barred by the statute of limitations.

On an application of this kind, it is competent for the heirs or devisees to show that the whole of the personal estate has not been applied to the payment of the debts; and the Surrogate can make no order for the sale of the real estate, until he is satisfied that the personal estate is insufficient. But the order may be made, "although the whole of the personal property of the deceased which has come to the hands of the executor or administrator has not been

9

applied to the payment of debts," if he has "satisfactory evidence that the executor or administrator has proceeded with reasonable diligence in converting the personal property of the deceased into money, and applying the same to payment of debts." (*Section* 18.)

The only amount of moneys collected by the executors is the sum of $410.04, received by them from the collector, and a large sum paid to them by the order of the Supreme Court, the proceeds of the rents of the real estate collected by a receiver during the litigation of the proof of the will and codicils. The furniture of the testator never came into the actual possession of the collector or the executors, but was retained by Mrs. Nichols, as a legatee thereof, under the 5th codicil to the will. The testator in his lifetime made various loans or advances to his children, sons-in-law and grandchildren, most of which were released by a provision in the will to that effect. Three thousand five hundred dollars, advanced by him to Mrs. Nichols and her husband, were by two codicils charged upon her share of the estate. For two thousand dollars of this amount, the testator took the notes of Mr. Nichols; but those notes do not appear to have been found by the executors, or to have come to their possession. The testator was the owner of leasehold estate at the Wallabout, upon which there was a vault, where he directed his body to be interred, saying, "My executors are well acquainted with my views on this subject; and I therefore, in carrying out such views, and in trust for such purpose, vest in them the title to a piece of ground, where said vault now stands, thirty feet on Jackson street, and sixty feet deep, which they will see enclosed for that purpose." These dimensions do not cover the entire premises, but leave a part of the lot, twenty-five feet on Jackson street, upon which stands a frame building, leased by the testator. The will directs the executors, for the purposes of distribution, to sell the real estate, and then proceeds to divide all the property, real and personal, into six shares, which are distributed among the children and grandchil-

dren. The direction to sell, is restrained by a provision that, in this particular, the executors shall be governed by the opinion of "the majority of the heirs," and shall in no event make sale "without such approbation."

It will thus be readily seen, that there is here abundant room for controversy, as to whether the personal estate is insufficient, and whether the executors have proceeded with reasonable diligence in converting the personal property into money, and applying the same to the payment of debts. If the payment of the debts is to be stayed till all these questions are settled, it will not only be a hardship to the creditors, but prejudicial to the interests of all parties interested in the estate.

As, by the will, the residuary personal and real estate is all thrown into one fund, and the same persons are interested to the same extent in the realty and the personalty, no inequality will be produced, so far as the leasehold premises at the Wallabout are concerned, if the debts be paid out of one fund instead of the other. And as part of those premises is dedicated by the will to special objects of a sacred character, I do not feel inclined to disturb the disposition of that property. (*Wood* vs. *Vandenburgh*, 6 *Paige*, 277.) It is expressly provided by law, that "land set apart, and a portion of which has been actually used, for a family or *private burying ground*, shall not be subject to levy and sale by any execution or *other legal process* whatever;" and although the conditions under which this exemption can be claimed as against creditors, have not been complied with in this case, I consider the principle as recognised by statute, and certainly one that ought to be sacredly observed by devisees and legatees. (*Laws* 1847, *ch.* 85., § 1.) The claim against Mrs. Nichols constitutes part of the personal estate, and I suppose the recital and terms of the codicils are binding upon her (*Robinson* vs. *Bransby*, 6 *Madd.*, 348); but the notes not having been found, and the demand not being recoverable except out of her share of the estate, it is plain that nothing could be collected unless by suit, and that proba-

bly a litigated one. Indeed, the only security for the debt is her interest in this very real estate.

The furniture bequeathed to Mrs. Nichols and the debts released to the children, sons-in-law and grand children, are all assets, and the respective parties are specific legatees. (*Rider* vs. *Wager*, 2 *P. Wm.*, 331.) But aside from the question whether the debts are outlawed, these parties, as specific legatees, according to the former rule in equity, in case their legacies were encroached upon for the payment of debts, would be entitled to have the assets marshalled against the devisees, so that the devisees and specific legatees should contribute to the payment of the debts in proportion to their respective gifts. (*Long* vs. *Short*, 1 *P. Wms.*, 403; *Tombs* vs. *Roch.* 2 *Coll.*, 490; *Gervis* vs. *Gervis*, 14 *Simons*, 654; *Aldrich* vs. *Cooper*, 8 *Vesey*, 396.) I understand the whole system of marshalling assets in such cases to be broken up, except as provided by the Revised Statutes, which undertake to point out the order in which the several funds shall be liable; viz., first, the personal estate, secondly the real estate descended, and thirdly, the real estate devised. (2 *R. S.*, 3*d ed.*, *p.* 547, § 32, *p.* 550, § 56.) I am not aware, however, that this point has met with judicial consideration.

It is obvious, then, that the personal estate which has actually come to the hands of the executors is insufficient for the payment of the debts. I am not satisfied that the prosecution of any of the claims just considered, would have resulted in any speedy collection of assets for the payment of these creditors; nor do I think that just demands should be postponed to abide the issue of such litigated claims. The fund in the Trust Company is amply sufficient for the payment of the debts. It is only drawing three per cent., while the debts are earning seven. A few years of delay under such circumstances would be ruinous. It was ordered by the Supreme Court to be paid to the executors, probably for the very purpose of administration. If, under the idea that the will effects an equitable conversion of the

real estate into personal estate, it be regarded as personalty, there is no impropriety in applying it to the payment of debts. If it be regarded as the proceeds of rents of the real estate, still, as I have power to order the real estate to be leased, it would be grossly improper to order rents to be raised in that way, when rents are already in the hands of the executors sufficient to discharge every debt. If the charge of $3,500 on Mrs. Nichols' share of the estate be recoverable, or if the specific legacies should be applied to the payment of the debts, without contribution from the devisees, the effect of applying the rents in the hands of the executors, to the discharge of these claims, will be to subrogate the devisees to the rights of the creditors; and all these embarrassing and complicated questions can be determined in a court of competent jurisdiction, when partition of the estate comes to be made. There is no reason why the creditors should await this result; and, as a course most beneficial to all parties concerned, I must order the payment of the debts by the executors out of the funds in their hands, deposited in the Trust Company.