Barnes *v.* Hathaway.

[Fourth Department, General Term, at Buffalo, January 7, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]

---

### Charles W. Barnes *vs.* Charles W. Hathaway and others.

H. devised certain real estate to his son, C., and directed that if C. should die without lawful issue, the estate should go to certain persons named. He gave to the executors of his will possession and control of the devised estate, the same to be held by them in trust for the benefit of C. Subsequent to the death of the testator, C. was, by an inquisition, found to be an idiot, and to have been so from his birth. C. died, leaving a wife and children. He also left debts exceeding, in amount, the value of his personal property.

*Held,* 1. That under the Revised Statutes C. took the estate devised, in fee, sub-

ject to be reduced to a life estate in the event of his dying without lawful issue living at the time of his death.

2. That the executors had a mere power in trust to manage the property, without interest in the land, except the right to occupy and cultivate.

3. That this trust did not interfere with the descent of the land to the children.

4. That C., although an idiot, was liable for necessaries suitable to the circumstances and condition of himself and family; unless some unfair advantage was taken of him.

5. That the children of C., to whom his lands descended, were bound by the action of the adminstrators of their father's estate, and of the surrogate in allowing debts, so far as the personal estate was concerned; but not as to the real estate; and the creditors must prove their claims to be legally chargeable upon the father, in order to collect them out of the land.

APPEAL by the defendants from a judgment entered upon the report of a referee.

Gilbert Hathaway, of Starkey, in the county of Yates, was owner in fee of a farm in said town on which he lived, and on the 30th June, 1854, he made a last will, wherein and whereby he devised to his wife, amongst other things, the use of said farm for life. On her death he devised the same to his son Charles, subject to the life estate of the wife. If he should die without lawful issue, it was then devised to certain grandchildren of the testator.

By a subsequent clause of said will, the testator devised said farm to his executors, to be held and possessed by them in trust for making improvements and the payment of his just debts, legacies and charges upon his estate. Provision was then made for the distribution of the net income derived from said farm, annually, between the wife of the testator and said Charles during their lives, and at the decease of his wife, the proceeds were then to be devoted to the payment of certain legacies, and the remainder to certain persons named in said will. By a codicil to said will, the testator devised to Charles a portion of the farm which by the will was devised to another of his sons. He also gave to his executors the possession, occupation and control of all and singular the

personal and real estate therein given to Charles, to be held in trust by them for his own use and benefit.

· The testator died in 1857, and the will and codicil were duly proved before the surrogate of Yates county.

Charles remained in possession of said farm till his death in 1867. He died intestate, leaving a widow and three minor children, who are the defendants in the action. In September, 1864, Charles was found by an inquisition duly authorized, an idiot, and that he had been so from his birth. Letters of administration were duly issued upon his estate, and the administrators assumed to, and did, administer on the same. Debts against the intestate were established, to the satisfaction of the administrators, to the amount of some $700 more than the assets of the estate could pay. The assets were apportioned amongst the creditors in proportion to their debts, and the administrators were discharged.

All the claims that were unpaid were assigned to the plaintiff, and he brings this action to charge the same upon the land that descended to the defendants from their father.

A guardian *ad litem* was appointed for the children, and the usual answer put in for them. The cause was referred, and the referee finds the facts above stated and others that are noticed in the opinion, and ordered judgment in favor of the plaintiff for the balance of the said debts, and that the same be paid out of the lands that descended to them from their father.

From this judgment the guardian for the infants appealed.

*C. G. Judd,* for the appellants, cited 2 *R. S.* 55, § 25 ; *Osgood* v. *Manhattan Co.* (3 *Cowen,* 612 ;) *Baker* v. *Kingsland,* (10 *Paige,* 368 ;) *Sharp* v. *Freeman,* (2 *Lans.* 172 ;) *Lane* v. *Doty,* (4 *Barb.* 535 ;) *Colson* v. *Brainard,* (5 *N. Y. Surr. R.* 327, *and cases cited ;*) *Marquand* v. *Webb,* (16 *John.* 89 ;) *Worrall* v. *Parmelee,* (1 *N. Y.* 519,

521 ;) *People* v. *Wiley*, (3 *Hill*, 214 ; 12 *Barb.* 235 ; 14 *id.* 109 ; 4 *How. Pr.* 34 ; 8 *N. Y.* 391, 392 ;) *Willard's Eq.* 196, 197, 198 ; 4 *Kent's Com.* 534, *and note c.* ; 6 *N. Y.* 420, *per Gridley, J.* ; *Leggett* v. *Perkins*, (2 *N. Y.* 305–6, *per Gardiner, J., and cases cited;*) *Stagg* v. *Beekman*, (2 *Edw. R.* 91 ;) *Brewster* v. *Striker*, (2 *N. Y.* 30 ; 1 *R. S.* 729, § 60 ;) *Briggs* v. *Davis*, (21 *N. Y.* 574, 576 ; 29 *Barb.* 79 ; 10 *N. Y.* 271 ; 7 *Paige*, 523, 536 ;) *Nicoll* v. *Walworth*, 4 *Denio*, 389 ; 1 *R. S.* 727, § 47 ;) *Germond* v. *Jones*, (2 *Hill*, 570, 574 ;) *Redfield* v. *Utica and S. R. R. Co.*, (25 *Barb.* 54 ; 4 *Alb. L. J.* 327 ;) *Kingsland* v. *Rapelye*, (3 *Edw.* 7 ;) *Dumond* v. *Stringham*, (26 *Barb.* 104 ;) *Bradstreet* v. *Clark*, (12 *Wend.* 602, 664, 665 ;) *Griffin* v. *Ford*, (1 *Bosw.* 133 ; 1 *R. S.* 730, § 67 ; *Law of Trustees*, 308, 315 ;) *Schermerhorn* v. *Barhydt*, (9 *Paige*, 29 ; 1 *Crary*, *Sp. Pro.* 596.)

*D. B. Prosser*, for the respondent, cited *Briggs* v. *Davis*, (21 *N. Y.* 576 ; 2 *R. S.* 452, § 33.)

*By the Court*, MULLIN, P. J. The principal ground of defence to the plaintiff's action is, that they (the defendants) did not take the land sought to be charged with the plaintiff's claim, from their father, the debtor, but under the will of their grandfather. If this position can be maintained, the plaintiff is not entitled to the relief granted herein by the referee.

The will of Gilbert Hathaway gave the farm to Charles, the father of the defendants, subject only to the life estate of the wife of the testator, which estate had been devised to her by the first clause of the will ; but, the estate thus granted was a fee, subject, however, to be reduced to a life estate in the event of his dying without lawful issue living at the time of his death.

There is no express devise to the children, of any interest in the farm, but the intention that they should have it at his death is manifest.

It is probable that by the law relating to estates in land, in force before the adoption of the Revised Statutes, Charles would have had an estate tail, and his lawful issue would have taken the fee under the grandfather's will. But as the Revised Statutes abolished estates tail, and turned them into estates in fee, Charles took in fee, subject to the condition above referred to, (*Wigram on Wills*, 110; 2 *Black. Com.* 113, &c; 1 *Redfield on Wills*, 302,) and his children who survived him took from him by descent, and not as purchasers.

The appointment of trustees by the will to manage the farm and apply the proceeds to pay debts, &c., did not prevent the fee from passing to the children on the death of their father. They had a mere power in trust to manage the property, without interest in the land, except the right to occupy and cultivate. It was not expected, probably, that these trustees should actually cultivate the land themselves, and they might, in execution of the trust, leave it to others until the objects of the trust were accomplished; and if so, they must have had an estate in the land which would support the lease. But however this may be, the trust did not interfere with the descent of the land to the children.

The defendant's counsel insists that no part of the indebtedness charged upon the land was, or could be, valid against their father, as he was duly found to be, and to have been, an idiot from his birth.

But the debts were for necessaries suitable to the circumstances and condition of the father and his family; and for them, even an idiot is liable, unless some unfair advantage has been taken of him. (*Skidmore* v. *Romaine*, 2 *Bradf.* 122, and cases cited. 1 *Story's Eq. Juris.* § 228.)

The appointment of a committee does not deprive a creditor who has advanced toward the support of the idiot or lunatic, or his family, necessary clothing and provisions, unless the committee has himself furnished

Barnes *v.* Hathaway.

what he deemed necessary and proper. When advances are made without the approval of the committee, the good faith of the transaction must be clearly established. The man, or his family, must not suffer because his committee does not, or cannot, procure them bread or clothing. And when the necessity is clearly shown, the creditor is entitled to recover.

The trustees were required to manage the farm, and out of the net proceeds pay legacies, &c. This contemplated that they would pay themselves for any advances they should have made out of the proceeds which came into their hands. It would be very unjust to allow the trustees to carry on the farm, divide the proceeds amongst legatees, and then charge the expenses of carrying it on to the land, and after the death of the father charge it on the farm.

There is no proof that the debt claimed by Wilson Haring was for necessaries. Until such proof is made, this claim cannot be allowed. The demand, as sworn to, is for goods, wares and merchandise. This evidence does not prove them to be necessaries. The referee finds, in his report, that the goods, &c., sold were necessary; but it is said in the case that it contains, substantially, all the evidence given on the trial, and there is nothing in the evidence to show that they were necessary.

The lands owned by the defendants were liable only for so much of the debts owing from their father, unpaid from the personal property which passed as assets into the hands of his administrators, and it was proper, if not indispensable, that it should be shown what amount of debts had been allowed, by the administrators, and the amount of assets realized and applied in payment of such.

The defendants were not bound by the action of the administrators, or of the surrogate, in allowing and paying debts.

So far as the present estate was concerned, the defen-

dants were bound, but when the creditors seek to collect the balance of their debts out of the land, they must prove their debts to be the debts of their father, and justly and legally chargeable upon him.

There is no reason to doubt but that the evidence of the admission of the debts by the administrators had some influence on the mind of the referee in determining the defendants' liability therefor.

The judgment must be reversed, and a new trial ordered before another referee, costs to abide the event.

New trial ordered.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, January 7, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]