In the Matter of the Judicial Settlement of the Account of THE MARINE TRUST COMPANY OF BUFFALO, as Committee of the Estate of MIECISLAUS FRANK KOPYTKIEWICZ (Also Known as MIECISLAUS F. KOPYTKIEWICZ), an Incompetent Person.

Supreme Court, Erie County, July 22, 1935.

*Burke & Desmond* [*Charles S. Desmond* and *Daniel C. Donoghue* of counsel], for the claimant.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Theodore G. Kenefick* and *George H. Hooker* of counsel], for The Marine Trust Company of Buffalo, as committee of the incompetent.

*Robert B. Foote*, special guardian of said incompetent.

NOONAN, J. This proceeding is brought by The Marine Trust Company of Buffalo, as committee of the estate of the above-named incompetent, for the judicial settlement of its account as such committee for 1934, and for the direction of the court as to the payment of the claim of His Eminence Dennis J. Dougherty, Cardinal Archbishop of Philadelphia, in the sum of $6,100 for the care and maintenance of said incompetent from January 1, 1923, to December 31, 1932.

There is no substantial dispute about the material facts in this proceeding. The incompetent was ordained as a Roman Catholic priest in Philadelphia, Penn., in 1892, and served as such in various parishes of said archdiocese until about January, 1920, when he became mentally incompetent. Before he was declared incompetent he gave a check to his brother, Monsignor Marion A. Kopytkiewicz, for $18,424.21, which was the balance the incompetent had in the Beneficial Saving Fund Society of Philadelphia, and the said Monsignor Marion A. Kopytkiewicz left the sum in said society in his own name as trustee for his incompetent brother.

The archdiocese maintains, under the rules of the church, a clerical fund to aid indigent priests in times of distress and trouble, payments being limited to fifty dollars per month for one person.

The incompetent was first confined in an institution in Pennsylvania until on or about July 28, 1921, when he was transferred to Providence Retreat at Buffalo, N. Y., where he has since remained. The charges for care at said institution have been eighteen dollars per week, and Monsignor Kopytkiewicz paid these charges, presumably out of the trust fund, up to December 31, 1922, but after that date fifty dollars per month, or $600 per year, was paid by the Archdiocese of Philadelphia out of said clerical fund.

For ten years, beginning January 1, 1923, and ending December 31, 1932, there was paid out of such fund to the Providence Retreat the sum of $6,000 for board, care and treatment of said incompetent, and $100 for some special treatment in 1923, and the balance of twenty-eight dollars per month, or $336 per year, was paid by Monsignor Marion A. Kopytkiewicz, presumably out of the trust fund that he was holding for the benefit of his brother.

It is conceded that those in charge of said archdiocese did not know of said trust fund until after the death of Monsignor Marion A. Kopytkiewicz, who died March 3, 1932, and that on December 18, 1933, the said archdiocese presented a claim to the committee of said incompetent for the amount which it has paid to Providence Retreat for his care and treatment. The basis for the allowance of the claim of said archdiocese is stated by counsel as follows: " Reimbursement is sought on the ground that the incompetent, though a priest of the Archdiocese, was not in fact indigent when these payments were made, but was the owner of a considerable sum of money available for his support, and that the moneys so paid from the Archdiocesan fund, in the belief that he was indigent, constituted an unjust enrichment of the incompetent's Estate at the expense of the fund, and should, in equity and good conscience, be returned from the incompetent's ample means to the fund, to be hereafter applied to the needs of priests actually indigent."

In this State it has long been held that " A court of equity, through its general jurisdiction over fiduciaries and its function of guardianship of incompetents, may, in a proper case, direct the committee to act in behalf of the incompetent in accordance with what the court finds would, in all probability, have been the choice of the incompetent if he had been of sound mind." (*Matter of Hills*, 264 N. Y. 349, 353.) (See, also, *Matter of Heeney*, 2 Barb. Ch. 326; *Matter of Flagler*, 130 Misc. 554; 248 N. Y. 415.) The same rule prevails in England (*Ex Parte Whitbread*, 2 Mer. *99; *Matter of Earl of Carysfort*, [1840] Craig & Phillips's Reports 76.) The controlling principle in all such cases is that the court is only permitting the committee to do the things the incompetent had done in his lifetime, or would probably do if sane. There is no evidence before the court to indicate what the incompetent would have done if sane, and the argument that he would not impose upon the church that he was bound to support is much weakened by the action of his brother who was under a like obligation.

It is also claimed that the acceptance of the money from such clerical fund was a constructive fraud which puts upon those resisting the claim the burden of showing that there was nothing unfair about the transaction and that everything about it was well known

and understood. The trouble with this doctrine, as I see it, is that no incompetent man can be guilty of constructive fraud; neither can he be bound by one acting in his behalf, because it would be beyond the scope of authority of the person so acting, and there is no evidence to show that any one on the part of the incompetent ever did anything improper to get the allowance from said clerical fund.

The doctrine of constructive fraud is not in great favor with the courts. (Bispham Principles of Equity [10th ed.], § 205, pp. 346, 347.) It is recognized where there is a fiduciary relation existing between competent parties such as attorney and client (*Pitcher* v. *Sutton*, 238 App. Div. 291), trustee and beneficiary (*Hart* v. *Goadby*, 72 Misc. 232) or partnership (*Butler* v. *Prentiss*, 158 N. Y. 49).

Under section 83 of the Personal Property Law any one who furnishes necessaries to an incompetent person is entitled to reasonable pay therefor. " Insane persons require support and their contracts, expressed or implied, for the necessaries of life may be enforced." (*Bicknell* v. *Spear*, 38 Misc. 389, citing Story Eq. Juris. § 228; *Barnes* v. *Hathaway*, 66 Barb. 452.) A lunatic's estate is liable for necessaries furnished him by a grocer who did not know that a committee had been appointed. (*Shaper* v. *Wing*, 2 Hun, 671.)

The claim presented is just and should be allowed, except as part of it may be barred by the Statute of Limitations, on the theory of a quasi or constructive contract which has been defined as " an implied promise in law, founded either on the doctrine that one should not be allowed to enrich himself unjustly at the expense of another; or on the doctrine that when an obligation is imposed by law upon one to do an act because of an interest in the public to have it done, and that one fails to do it, he who does do it, expecting compensation, may recover therefor of him on whom the obligation is imposed." (*Mathie* v. *Hancock*, 78 Vt. 414; 63 A. 143; 13 C. J. 244, § 10.)

In the case of *Miller* v. *Schloss* (218 N. Y. 400, at p. 407) the court says: " A quasi or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex æquo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contrac-

tual, in order to fit the cause of action to the contractual remedy." (Citing *Board of Highway Commissioners* v. *City of Bloomington*, 253 Ill. 164; 97 N. E. 280; *Morse* v. *Kennedy*, 87 Vt. 445; 89 A. 865; *Columbus, Hocking Valley & Toledo Ry. Co.* v. *Gaffney*, 65 Ohio St. 104; 61 N. E. 152; also 1 Williston Cont. § 255.)

The only remaining question is whether or not any part of the claim is barred by the Statute of Limitations. It was the duty of the committee to interpose that defense. (*Butler* v. *Johnson*, 111 N. Y. 204.) It is claimed that the relief asked for is equitable and that the ten-year Statute of Limitations applies (Civ. Prac. Act, § 53), while the committee contends the action is one at law and that the six-year statute (Civ. Prac. Act, § 48) must control. It is well settled that where the claimant has an action at law as well as an equitable remedy, and that where both remedies are available, the six-year Statute of Limitations must govern. (*Keys* v. *Leopold*, 241 N. Y. 189.) In my opinion, the claimant has a remedy at law and is, therefore, bound by the six-year statute. (*Keys* v. *Leopold*, *supra*.)

The account of the committee as filed is conceded to be correct and, therefore, an order may be entered passing the account as filed, and also allowing the claim of the Archdiocese of Philadelphia for all amounts paid in the six years previous to filing its claim with the committee, together with interest on each payment from the time it was made. The matter of allowances, if any, is reserved for future consideration.

Enter order in accordance with this decision.