OLD MEN'S HOME, INC., v. LEE'S ESTATE.

(In Banc.   June 9, 1941.)

[2 So. (2d) 791.   No. 34672.]

**L. L. Posey,** of Jackson, for appellee, on motion to strike the bill of exceptions.

Butler & Snow, George H. Butler, Jr., and O. B. Taylor, all of Jackson, for appellant, on the merits.

L. L. Posey, of Jackson, for appellee, on the merits.

Butler & Snow, of Jackson, for appellant, in reply.

On Motion.

Smith, C. J., delivered the opinion of the court on motion.

The reporter of the court below failed to file a transcribed copy of his notes of the evidence, and a bill of exceptions prepared "as in cases where no court reporter takes down the evidence" was tendered to and approved by the judge of the court below. The appellee has filed

a motion to strike this bill of exceptions from the record, alleging as a reason therefor that: ''Final decree herein was entered in vacation October 16, 1940, and on October 22, 1940, the official court reporter was given notice by appellant to transcribe and file his official notes in this cause as required by law. On December 17, 1940, appellant filed its appeal bond and the same was approved by the Chancery Clerk of Claiborne County, Mississippi, December 17, 1940. The official court reporter never transcribed and filed his notes as required by law. On March 26, 1941, appellant filed and presented to the Chancellor its bill of exceptions which was approved and allowed on March 26, 1941.

''Therefore, the bill of exceptions was filed and presented to the Chancellor and allowed by him out of time allowed by law for filing and presenting bills of exceptions and should be stricken from the record.''

Under Section 725, Code of 1930, as amended by Chapter 236, Laws of 1936, this court reporter had sixty days after the filing and approval of the appeal bond herein in which to file a transcript of his notes of the evidence, which time could have been, but was not, extended thirty days under Section 727 of the Code. Section 729 of the Code under which this bill of exceptions was filed provides that ''if the original or the copy of the court reporter's notes shall be lost or destroyed, or defaced in any manner, or if the court reporter should die, resign or be unable or otherwise should fail to transcribe his notes, and furnish a typewritten copy of his notes, sixty days additional time shall be allowed for the preparation of a bill of exceptions, or as the case may be, another copy of the transcribed notes. In case a copy of the transcribed notes cannot be furnished, a bill of exceptions may be prepared within the time stated, as in cases where no court reporter takes down the evidence.'' This clearly allows an appellant in cases where the court reporter fails to file a copy of his transcribed notes of the evidence sixty days additional to the time allowed the reporter in which to file the transcript, in which to

furnish a bill of exceptions "as in cases where no court reporter takes down the evidence." The bill of exceptions here was filed within such additional time but the movant says that this additional time if desired by an appellant must be applied for and granted before the expiration of the time allowed the reporter for filing his transcript. The statute does not so require and Mississippi State Highway Department v. Meador et al., 184 Miss. 381, 185 So. 816, 186 So. 642, invoked by the movant, does not so hold though there is language therein that might be so construed.

In that case the court reporter failed to file a transcribed copy of his notes and the appellant obtained an order from the trial judge granting it sixty days from the date of the order in which to file a bill of exceptions. The time thus extended exceeded the limit permitted by the statute. Consequently, the bill of exceptions filed pursuant thereto was stricken from the record. Whether a request for the extension was necessary was not presented for decision.

Motion overruled.

### On the Merits.

**Anderson, J.,** delivered the opinion of the court on the merits.

Appellant, Old Men's Home, Inc., probated its claim against the estate of C. P. Lee, deceased, the appellee. The claim was contested by his executrix, who is also the sole legatee and devisee in his will. The statement of the claim is in this language: "Amount due for room, board, laundry, nursing and medicine from January 8, 1937, to February 23, 1940, at $30.00 per month for 38½ months, $1155.00." The contest was heard on the pleadings and evidence.

The basis of the claim was that Lee obtained care and maintenance at the Old Men's Home by the false and fraudulent representations that he was over 65 years of

age and a pauper, and in such physical condition as to be unable to earn anything, and with no one to depend on for help; when in truth and in fact, at the time he entered the home, and continuously thereafter, up to the time of his death, he had to his credit in a bank in this state something over $5,000, which was unknown to the Superintendent of the Home or any other person connected with it. There was no substantial conflict in the evidence. The Chancellor found that there was no liability on the part of the estate because of the absence of a contract to pay.

The Old Men's Home is a corporation under the laws of this state, with a Board of Trustees, and rules and regulations. Under its charter and governing rules, its purpose and practice is to take care of homeless, helpless, neglected and dependent old men 65 years of age and over, in other words, homeless and helpless paupers.

The funds for the operation and maintenance of the Home are derived from donations from the state legislature, from boards of supervisors of some of the counties and private persons charitably inclined. Sometimes when there was a vacant room in the Home, and an applicant for admission met the requirements, and "some friend or relative was willing to make a donation to the Home which was sufficient with other available funds to enable the Home to provide for the care and maintenance of the applicant, he would be received."

While in the Home Lee was so old and infirm as to be unable to perform any kind of work. The Home furnished him board, lodging, clothing, laundry, nursing care and medical attention. He received, along with other charity patients, "the money contributed by organizations and others for the purpose of being disbursed to the inmates as spending money." The evidence showed, without any conflict, that $30 a month for such care and support was reasonable; that it represented approximately the actual cost to the Home.

It is true, as the Chancellor found, that there was no express contract on the part of Lee to pay the Home any-

thing if it turned out he had procured its services through false and fraudulent representations as to his financial condition; nevertheless, we hold that by reason of such representations the law imposed an obligation on him to make the Home whole. The law denominates it as quasi or constructive contract. Such contracts rest upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. ''It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience, he ought not to retain it, and which ex aequo et bono belongs to another.'' Miller v. Schloss, 218 N. Y. 400, 407, 113 N. E. 337, 339. That quotation from the New York Court is supported by the authorities generally. Am. Law Inst. Rest. Law of Restitution, chapter 2, sections 26 and 40; In re Marine Trust Co., 156 Misc. 297, 281 N. Y. S. 553; Sanders v. Ragan, 172 N. C. 612, 90 S. E. 777, L. R. A. 1917B, 681.

The foundation of the principle is equity and good conscience. The same principle applies as in a case of this kind: A induces B, a merchant, by falsely representing himself to be a pauper and unable to earn a living, to furnish him the necessities of life. B acts on such representation, believing it to be true. It turns out to be false, that he has ample means of supporting himself. A, under the law, is due to reimburse B for the value of his contribution.

It is contended on behalf of Lee's estate that the evidence failed to show that he had any financial means when he entered the home, and when he died. There is no merit in that contention. Dr. Harrington, Superintendent of the Home, testified that after Lee's death he had learned that when Lee entered the Home, and continuously, up to the time of his death, he had a credit in a bank exceeding the sum of $5,000.

The contention is further made that under section 1671, Code of 1930, the claim was not probatable because it was made up of unliquidated damages for a tort. There is no merit in that position. It is not sought to recover unliquidated damages. The foundation of the claim is reasonable compensation for care and support. Tarver v. Lindsey, 161 Miss. 379, 137 So. 93, although not directly in point, is illustrative.

We are of opinion that the claim ought to have been allowed by the Chancellor.

Reversed and judgment here for appellant.