**UNITED STATES of America**

**v.**

**Benjamin A. STEIN, Administrator d.b.n. of the Estate of Patrick Paine, late of Togus in the Town of Chelsea, County of Kennebec, Maine.**

**Civ. No. 1076.**

United States District Court
D. Maine,
Southern Division.
June 30, 1958.

Peter Mills, U. S. Atty., Portland, Me., for plaintiff.

Benjamin A. Stein, pro se.

GIGNOUX, District Judge.

This is an action brought by the United States of America to recover the sum of $2,512.21 allegedly owed by the defendant's intestate for maintenance furnished him during the periods of his residency in two branches of the National Home for Disabled Volunteer Soldiers, since transferred to the United States and incorporated in the Veterans Administration. The matter has been submitted for decision on the basis of the pleadings, a stipulation, and a brief filed by the plaintiff on May 5, 1958. The pertinent facts, as agreed to by the parties, are as follows:

On June 25, 1951, the defendant was appointed Administrator d. b. n. of the Estate of Patrick Paine by the Probate Court for Kennebec County, Maine. Paine, late Company K, 10th New Hampshire Infantry, was admitted as a Civil War Veteran to the Eastern Branch of the National Home for Disabled Volunteer Soldiers, National Soldiers' Home, Maine, on April 5, 1881; transferred to the Northwestern Branch, National Home for Disabled Volunteer Soldiers, National Home, Wisconsin, on October 25, 1882; discharged therefrom on April 8, 1884; readmitted, Eastern Branch, on July 25, 1893, and died therein on October 5, 1908.

The National Home for Disabled Volunteer Soldiers was incorporated into the Veterans Administration under the jurisdiction of the Administrator of the Veterans Affairs, pursuant to Executive Order No. 5398, dated July 21, 1930, promulgated under the authority contained in the Act of July 3, 1930, c. 863, §§ 1, 3 and 4, 46 Stat. 1016, 38 U.S.C.A. § 11 et seq.

The cost of Paine's maintenance during the periods of his residency in the total amount of $2,512.24 has been computed by use of "Table E—Statement of Annual Cost Per Capita Each Year from Organization to 1930," as contained in the "Report of the Board of Managers for the Fiscal Year Ended June 30, 1930, National Home for Disabled Volunteer Soldiers," H.D. No. 546, 71st Cong., 3rd Sess. The Government records indicate that no payment on this account was received at any time from any source, including the pension paid to the decedent during his lifetime, which varied in amount from $6 to $17 per month.

On July 1, 1901, Savings Account No. 8905 was opened in the Kennebec Savings Bank, Augusta, Maine, with a deposit of $60.00, presumably in the name of Patrick Paine. Small, frequent deposits and interest additions brought the balance of this account to $712.86 on October 5, 1908, the date of Paine's death. No additions, other than interest, were made from that date until January 26, 1953, when the account was withdrawn by the defendant. The total sum then in the account was $3,057.97.

A claim for the amount sought by the plaintiff was filed with the defendant on January 22, 1953. Defendant's refusal to pay precipitated the instant action, begun by complaint filed May 7, 1954.

The plaintiff's claim is based upon a resolution adopted by the Board of Managers of the National Home for Disabled Volunteer Soldiers on December 12, 1873, found in Laws and Regulations National Home for Disabled Volunteer Soldiers (1892) at p. 105, and upon the Act of Congress of May 26, 1900, 31 Stat. 217.

The resolution of December 12, 1873 reads as follows:

"Resolved, That every disabled soldier is admitted to the benefits of the National Home upon the express condition that he has not the means, as well as the physical ability, to support himself by labor; and if it shall at any time appear that he has property or estate out of which he might have been supported, for a part or all the time, during which he has been supported by the Home, then it shall be the right and duty of the Commandant to charge up

against the beneficiary the amount expended in his behalf, and that amount shall constitute a debt to the National Home and be a lien upon any property or effects of such beneficiary that may come into the possession or control of the Home."

The Act of May 26, 1900 provides:

"Hereafter the following persons only shall be entitled to the benefits of the National Home for Disabled Volunteer Soldiers and may be admitted thereto upon the order of a member of the Board of Managers, namely: All honorably discharged officers, soldiers, and sailors who served in the regular or volunteer forces of the United States in any war in which the country has been engaged, who are disabled by disease, wounds, or otherwise, and who have no adequate means of support, and by reason of such disability are incapable of earning their living."

In the stipulation which has been filed by the parties, it has been agreed that the resolution of December 12, 1873 "was apparently allowed to lapse from the published regulations at approximately the date of the Act of May 26, 1900."

At the outset, it should be noted that despite the lapse of time since its claim arose, the plaintiff's right to recover, if a valid claim has ever existed, cannot be disputed, for it is well settled "that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." United States v. Summerlin, 1940, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283; In re Morse's Estate, 1941, 137 Me. 302, 305, 19 A.2d 247.

To establish its claim against this defendant, the Government proceeds on the theory of quasi-contract, relying on the case of Old Men's Home, Inc., v. Lee's Estate, 1941, 191 Miss. 669, 2 So.2d 791, 4 So.2d 235. In its own words, the Government's contention is that (Government Brief, p. 7):

"The common law principle, of which the quoted resolution was only declaratory and implementing, that, since the veteran represented by his application for admission that he had no means of support, if in fact upon his death it be found he left property, the Home is entitled to reimbursement from his estate on the theory of quasi-contract. See Old Men's Home v. Lee's Estate (1941) 191 Miss. 669 [2 So.2d 791], 4 So.2d 235). (Sic.) This theory appears especially applicable to so much of the veteran's residence in the Home as was subsequent to the Act of May 26, 1900."

This Court takes no exception to the common law principle enunciated by the case cited. The decedent in that case had falsely and fraudulently represented to the Old Men's Home that he was a pauper when, in fact, at the time he entered the Home "and continuously, up to the time of his death, he had a credit in a bank exceeding the sum of $5,000". 4 So.2d at page 236. It was specifically because of such fraudulent representation that the court there held that "the law imposed an obligation on (the decedent) * * * to make the Home whole." 4 So.2d at page 236.

In the instant case the agreed facts disclose no fraud. Patrick Paine is not accused of deceit. No assets are shown to have been possessed by him at all until 1901—twenty years after his initial admission to the Home and eight years after his readmission—when he opened a savings account with a deposit of $60. Over the next seven years, the last seven years of Paine's life, small deposits and interest additions brought the total amount in the account to $712.86 on the date of his death. The small sums thus put aside by Paine not only were non-existent at the time of his admission to the Home, but were accumulated, presumably from his pension, over a period of more than seven years. This showing can hardly be said to establish fraudulent concealment sufficient for a ruling in favor of the plaintiff on the theory of quasi-contract.

In its brief plaintiff contends, however, that Paine was bound by the resolution of December 12, 1873, because his signed application for admission to the Home in 1881 contained the statement that "* * * said applicant further stipulates and agrees that he will abide by and obey all the rules and regulations made by the Board of Managers, or by their order. * * *." Neither the pleadings nor the stipulation entered into by the parties mention such an agreement by Paine. But even assuming the existence of such an agreement, it is immaterial to this issue. As has been noted, the parties have stipulated that the resolution was apparently allowed to lapse at approximately the date of the Act of May 26, 1900. On the record before this Court Paine did not have any assets prior to July 1, 1901, over a year after the resolution relied on had lapsed. The burden of establishing the claimed indebtedness lies with the plaintiff, and it has failed to show that during the period the resolution was in force Paine had "property or estate out of which he might have been supported, for a part or all the time, during which he" had been supported by the Home. The resolution is thus in terms inapplicable to the factual situation disclosed in the instant case.

Nor can recovery be allowed this plaintiff on the basis of the Act of May 26, 1900, which provided that thereafter only disabled veterans without adequate means of support and incapable of earning their living should be entitled to the benefits of the Home. Being prospective only, recovery under this Act could apply, if at all, only to maintenance furnished Paine from May 26, 1900 to the date of his death. But even as so limited, the Act is not, in terms or evident intent, identical with the lapsed resolution and cannot be substituted therefor. The resolution provided for the imposition of a debt upon a beneficiary shown to have had some means of support during his residency in the Home. The Act does no more than set out the conditions of eligibility to receive the benefits of the Home.

Even if, therefore, Paine's meager savings could be found to constitute "adequate means of support" which should have disqualified him from receiving the benefits of the Home during the period subsequent to 1900, plaintiff's claim to recover the cost of such maintenance can be based only upon the common law principle of quasi-contract resulting from fraudulent concealment, which this Court has already found to be inapplicable.

For the foregoing reasons, this Court is of the opinion that the plaintiff has not sustained its burden of establishing the defendant's indebtedness to it. It is, therefore, ordered, adjudged and decreed that judgment be, and hereby is, entered for the defendant.