370 So.2d 925 (1979)
Mack G. GIBBONS
v.
ASSOCIATED DISTRIBUTORS, INC., d/b/a West Discount Building Materials Company.
No. 51179.
Supreme Court of Mississippi.
May 9, 1979.
Roberts & Easterling, S. Wayne Easterling, Hattiesburg, for appellant.
Gray, Montague, Jackson, Pittman & Hammond, S. Robert Hammond, Jr., Hattiesburg, for appellee.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant, Mack G. Gibbons, appeals from a directed verdict rendered against him by the Circuit Court of Lamar County.
Appellant filed his declaration against appellee, Associated Distributors, Inc., d/b/a West Discount Building Materials Company, alleging that appellee owed him a balance of compensation earned through May, 1976. Defendant answered, denying the allegations of the declaration and alleging as an affirmative defense that appellant's cause of action, if any, was barred by the statute of frauds. At the conclusion of appellant's evidence, the court sustained the motion of appellee under its plea in bar and *926 held that under appellant's evidence the claim was barred.
Mississippi Code Annotated section 15-3-1(d) (1972), provides as follows:
An action shall not be brought whereby to charge a defendant or other party:
.....
(d) upon any agreement which is not to be performed within the space of fifteen months from the making thereof; or
.....
unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.
Appellant's testimony and documents introduced therewith was the only evidence submitted by appellant. He testified that in 1970 he was induced to move from Fairhope, Alabama, to Lamar County, Mississippi, under an agreement of employment as manager of appellee's Hattiesburg, Mississippi, store. Appellee had sixty-seven discount building material stores over the southern states. According to the original agreement for the managing of the Hattiesburg store, appellant was to receive a total of a series of intricate base pay advances per week with a guarantee of a total salary of $45,000 per year. The Hattiesburg store was successful under appellant's management, and in 1974 the duly authorized representative of appellee requested appellant to move to Jackson, Mississippi, for two years and manage the store there, which store was losing a lot of money each year. According to appellant, he was reluctant to take his children from school and move to Jackson but he agreed to do so in the event his annual guarantee was increased to $55,000. This was agreed to by appellee and appellant moved to Jackson and took over the store there. According to appellant, the store immediately started making a profit and continued to do so.
The latter part of June, 1975, appellant received a letter dated June 26, 1975, from Stan Moseley, personnel manager for the appellee's entire company. This letter was as follows:
MEMO TO: Mack Gibbons
SUBJECT: Compensation Adjustment
The Jackson store has been classified as an existing B operation.
Base compensation for General Management at Jackson will be increased from $300 to $365 per week.
Your Profit Manager's base of $72.12 remains the same. Your Profit Manager's ROI guarantee decreases from $200 per week to $135 per week.
Car allowance of $50 per month remains the same.
Your guarantee for total performance in 1975 is $____.
The adjustment will take place in three periods in approximately equal increments.
 August 2nd
 October 4th
 December 6th
 /s/ Stm
 Stan Moseley
It was appellant's testimony that by the letter the company was changing the Jackson store classification and operations and was changing his method of compensation and his employment agreement. He noted the changes as shown in the letter and noted that the total guarantee was left blank. He then called by telephone one Charlie White, vice president in charge of the region including the State of Mississippi, regarding what, if any, guarantee he, the appellant, was to receive as a result of the June 26, 1975, letter. According to appellant, White assured him that the guarantee would be $55,000 per year even though changes were being made in the base pay.
The letter of June 26 stated that adjustments in the agreement were to be made on August 2, October 4 and December 6. Pursuant to discovery, appellant had received completed forms regarding his employment with appellee. The multiple style of each *927 of these forms was "New Hire  Notice of Separation  Change of Status  Work Interruption." Included with these forms for different periods since the time of appellant's employment was a recapitulation sheet. This showed that appellant's guarantee was $55,000 per year until the August 2, 1975, adjustment which deleted this item and it was not included in the recapitulation or on the separate sheets thereafter. An analysis of the separate sheets and the recapitulation sheet shows that the various items of intricate base payments were changed as stated in Moseley's letter. Appellant, in his testimony, explained the basis for the various items of weekly draw. It is sufficient to say that the computation of these are very complicated and it is hard to understand how they were computed. It is clear, however, that there was a definite change in the manner and the amount appellant was to be paid each week after June 26, 1975.
Appellant contends that although the original agreement of May, 1974, for appellant to manage the Jackson store for two years, was not to be performed within a period of fifteen months and therefore came under the provisions of the statute of frauds, that there was a new agreement in June, 1975, which was to be performed within a period of one year. We agree that appellant's evidence clearly made a question for the jury under this contention.
In Moore v. Smart, 171 Miss. 248, 157 So. 467 (1934), this Court said:
Where an oral contract is unenforceable under paragraph (d) of section 3343, Code of 1930, the parties thereto may, of course, thereafter enter into a new oral contract though identical in terms with the former, but a recognition of the former contract does not result in the formation of a new contract, unless it appears therefrom that the parties intended thereby to enter into a new contract, 1 Williston on Contracts, § 503; 25 R.C.L. 480; 27 C.J. 174-186.
In the case of Flowood Corporation v. Chain, 247 Miss. 434, 152 So.2d 915 (1963), we find the following:
Whether that agreement be referred to as a modification of the original contract or a new contract is not a matter of importance here. It was an agreement, definite in its terms, which satisfied both parties and which was to be performed within a space of fifteen months from the making thereof, and was not within the Statute of Frauds.
We hold that the lower court erroneously found that the only contract was the two-year agreement beginning May, 1974. As stated above, there was ample evidence that a separate and distinct new agreement was entered into the latter part of June, 1975. Even though the written documents discussed above were bolstered by oral testimony, the alleged new agreement was well within the statutory period.
There is another reason why the lower court was in error. The general rule is that complete performance by one party of an oral contract not to be performed within the statutorily prohibited period, takes the contract out of the statute of frauds. Appellant testified that when he gave notice of resignation on May 17, 1976, he offered to stay and would stay on the job the remaining two weeks in the month of May, which would complete the original two-year oral contract. There was sufficient evidence for this question to be presented to the jury.
In Pountaine v. Fletcher, et al., 158 Miss. 720, 126 So. 471 (1930), this Court adopted the foregoing rule of law by stating:
"But the great weight of authority supports the rule that the statute of frauds has no application where there has been a full and complete performance of the contract by one of the contracting parties, and the party so performing may sue upon the contract in a court of law; he is not compelled to abandon the contract and sue in equity or upon a quantum meruit. Particularly is this said to be true where the agreement has been completely performed as to the part thereof which comes within the provisions of the statute, and the part remaining to be *928 performed is merely the payment of money or the performance of some act, the promise to do which is not required to be put in writing."
The cause is therefore reversed and remanded.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.