576 So.2d 134 (1991)
Alfred R. KOVAL, Sr. and Anna M. Koval
v.
William Michael KOVAL and Vicky Sue Koval.
No. 89-CA-1088.
Supreme Court of Mississippi.
February 20, 1991.
*135 Bobby Joe Randall, Gulfport, for appellants.
Glen V. Murphy, Long Beach, for appellees.
Before DAN M. LEE, P.J., and PRATHER and PITTMAN, JJ.
PITTMAN, Justice, for the court:

I.
William and Vicky Koval instituted this action against William's parents, Alfred and Anna Koval, seeking title to an improved parcel of land allegedly promised to the appellees by the appellants. Alternatively, appellees sought a judgment for monies expended in improving the realty in question. After a bench trial in the Chancery Court of Harrison County, First Judicial District, Chancellor William Stewart ruled in favor of appellees awarding them $23,853.80 and impressing an equitable lien upon the subject realty. In affirming the judgment of the lower court, we find that the conclusions of fact and law expressed by Chancellor Stewart are a comprehensive ruling and a model opinion regarding today's case. Consequently, we adopt Chancellor Stewart's opinion in this matter and attach it as Appendix A.

II.

APPENDIX A
In this cause, a family controversy, the plaintiffs initiated a suit in chancery seeking enforcement of an oral contract to convey real property against the parents of William Michael Koval. William is married to Vicky Sue Koval. As the plaintiffs, they alternatively seek to impress an equitable lien along with other relief.
Mr. Alfred R. Koval, Sr., and his wife, Anna M. Koval, filed a cross-claim alleging defenses of the Statute of Frauds, Statute of Limitations, and other matters, saying the original suit is a frivolous and false claim.
The evidence reveals, even though remotely with reference to the genesis of William's claim, that while William was a minor his parents, in 1970, bought a house in a Gulfport subdivision, using his inherited money as a down payment. Subsequently, while in a divorce suit, William deeded his interest in the same property to his mother Anna, at the suggestion of the defendants, when he was 17 or 18, in order to prevent William's marital opponent from getting her hands on it.
The defendants sold that realty in 1982, with a substantial profit of some $16,000.

....
The plaintiffs [sic] stated they had a pattern of aiding each of their children to obtain a home; and while the evidence revealed such a pattern, it did not reveal consistency nor equality in the application of the pattern.
The defendants offered William (and he said in return for their keeping the $16,000 profit) a plan whereby William would have a home. In the words of Mrs. Anna Koval, they decided to give him a house (the subject realty at 2625 19th Avenue in Gulfport) and told him if he would fix it up he could live there without ever worrying about where he would live. She admitted making such an agreement, and specified that nothing was reduced to writing. In fact, all dealing as to this matter within the family has been verbal. Their plan was to give William money for building materials, and she thinks $7,000 was spent. She says that William and Vicky Sue did "some" work on the place but that Fred, her husband, was largely responsible for construction of the house as it now sits.
A realtor, Lenny Sawyer, testified that the real property now has a market value of $24,500, and that it was worth about $5,250 in April 1982 when William and Vicky Sue began work, since the building on the land was not habitable.
*136 Mrs. Anna Koval and other witnesses established that title was never transferred to William and that it wasn't intended to be, but that he obtained a boat loan of $6,000 on the realty prior to the breakdown of their relationships.
William asserted that he had paid some $4,500 on the loan and that he, his wife, friends, and workers obtained by him substantially completed the house in one year and filled in most low-lying property. Further, that work has continued until 1988, mostly done by him, Vicky Sue, and non-family members. His version of the agreement with his parents is substantially the same as stated by his mother, except he stated they promised to convey the 19th Avenue property (also described as Lots 3-10, Block 8, Arlington Heights Addition, Gulfport, First Judicial District, Harrison County, Mississippi) to plaintiffs, and defendants would purchase up to $5,000 of building materials in exchange for the full $16,000 profit gained from the College Park sale.
When the house was completed and the yard vastly improved, the defendants obtained a loan of $25,000 on the realty based upon a $35,000 market value estimated by two other appraisers, son-in-law Ellis and realtor Pete Lamey. The property is zoned residential, although it is situated in a flood plain and formerly was zoned heavy industry commercial. The defendants paid off the boat loan balance when obtaining the larger loan... .
This family battle was brought to a head in May of 1988 when William and his wife asked for a deed from the defendants. There was considerable heat, involving shouting, threats and the like, which ultimately resulted in this proceeding.
The facts of the case at bar do not support the theory of joint venture between plaintiffs and defendants. The Mississippi Supreme Court has interpreted a "joint venture" as an enterprise undertaken by several persons jointly to carry out a single business enterprise for profit (emphasis added). Sample v. Romine, 193 Miss. 706, 8 So.2d 257 (1942); Boxwell v. Champagne, 229 Miss. 355, 91 So.2d 256 (1957); Tillman v. Hults, 480 So.2d 1134 (Miss. 1985). No evidence was presented in the case at bar to suggest that either party intended that any profit would flow from their agreement. Rather, according to the weight of the credible evidence, the purpose of their agreement was that the plaintiff, William Koval, would be compensated for the sale of his property in College Park Subdivision by the defendants giving him a home upon a lot worth $5,000 and pay for building materials worth $5,000. In light of the fact that the net proceeds from the sale which the defendants kept was $16,000, it is apparent that they in fact realized a profit from the deal; but such was not the intent of the plaintiffs when the agreement was made in 1982. The plaintiffs say the defendants have been unjustly enriched.
In Estate of Johnson v. Adkins, 513 So.2d 922 (Miss. 1987), it was stated:
"Unjust enrichment is an equitable remedy closely associated with `implied contracts' and trusts. In Hans v. Hans, 482 So.2d 1117 (Miss. 1986), the Court said:
"`The doctrine of unjust enrichment or recovery in quasi-contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.' 482 So.2d at 1122.
... .
"The measure of recovery is a distinction between quantum meruit and unjust enrichment. Recovery in quantum meruit is measured by the reasonable value of materials or services rendered, while recovery in unjust enrichment is that to which the claimant is equitably entitled. See Kalavros v. Deposit Guaranty Bank & Trust Co. [248 Miss. 107] 158 So.2d 740 (Miss. 1963); and Magnolia Federal Savings & Loan v. Randal *137 Craft Realty, 342 So.2d 1308 (Miss. 1977)."
In Magnolia Federal Savings & Loan v. Randal Craft Realty, 342 So.2d 1308 (Miss. 1977), our Supreme Court held:
"A quasi-contract, or constructive contract, is based on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In this respect the terms `unjust enrichment' and `restitution' are modern designation for the doctrine of `quasi-contracts' and the basis for an action for `unjust enrichment' lies in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his. 17 CJS Contracts, Section 6.
"In Old Men's Home, Inc. v. Lee's Estate, 191 Miss. 669, 2 So.2d 791 (1942), we pointed out that a quasi or constructive contract rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. It is an obligation created by law, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money under circumstances that in equity and good conscience he ought not to retain and which in justice and fairness belongs to another.
"Furthermore, in Cooke v. Adams, 183 So.2d 925 (Miss. 1966), we held that any conduct of one party from which the other party may draw the inference of a promise is effective as such and the conduct of the parties is viewed as a reasonable man would to determine the existence or not of the contract implied in fact."
The facts of the case at bar lend themselves to a recovery by the plaintiffs under the theory of unjust enrichment at the expense of the plaintiffs if the status quo is maintained. A property that was worth only $5,000 when the plaintiffs took it over and began to improve it is now valued between $24,500 and $35,000 due overwhelmingly to their efforts. Justice and fairness require that the defendants shall not be allowed to retain the property; or, if they are, then plaintiffs should be compensated for their work.
The doctrine of equitable estoppel is also sought to be invoked by the plaintiffs. It is defined generally as the principle by which a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed.
The doctrine of estoppel is based upon the ground of public policy, fair dealing, good faith and justice, and its purpose is to forbid one to speak against his own act, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon. 28 Am.Jur.2d 647, Sections 27 and 28.
Normally, equitable estoppel is a rule of justice which prevails over all other rules. It may, in proper cases, operate to cut off a right or privilege conferred by statute or even by the constitution. 28 Am.Jur.2d 627, Section 34.
In PMZ Oil Co. v. Lucroy, 449 So.2d 201, (Miss. 1984) the Mississippi Supreme Court affirmed the above rule, stating:
"We are concerned here with a doctrine which has its roots in the morals and ethics of our society. .. . Fundamental notions of justice and fair dealings provide its undergirding. Whenever in equity and good conscience persons ought to behave ethically toward one another the seeds for a successful employment of equitable estoppel have been sown."
The Court went further:
"Without doubt, our statute of frauds provides that no contract for the conveyance of an interest in land is binding unless signed by the party to be charged. Miss. Code Ann., Section 15-3-1(c) (1972). Equitable estoppel, however, is a well-established exception to our statute of frauds. Our cases have repeatedly held that, where the elements of equitable estoppel are present, the statute of frauds constitutes no bar to enforcement of that to which a party has agreed."
*138 Also, it is a general principle that complete performance by one party of an oral contract not to be performed within the statutorily prohibited period takes the contract out of the statute of frauds. Gibbons v. Associated Distributors, Inc., 370 So.2d 925 (Miss. 1979). Nor does the statute of frauds apply to an equitable lien which arises by operation of law. Neyland v. Neyland, 482 So.2d 228 (Miss. 1986).
These principles are based on justice, fair play, and the belief that a person should do what he says he will do in situations where another party is injured by reliance on the first party's representations. As our court said in PMZ Oil Co. v. Lucroy, supra, it matters not whether the party making the statement intended to deceive the other party at the time the statement was made; rather, the test is whether it would be substantially unfair to allow a person to deny what he has previously induced another to believe and take action on.
The Kovals, Sr. told the Kovals, Jr. that they could have the property on 19th Avenue if they would develop it, but when William and Vicky Sue increased the value of the property the Senior Kovals changed their minds.
It would be unfair to allow the defendants now to deny their previous statements and be unjustly enriched at plaintiffs' expense... .
A judgment should be entered for the plaintiffs amounting to the balance of the present loan, less the sum whereby the bank loan was paid off. The money held by the defendants (obtained as a result of the existing loan) should be immediately applied to the reduction of this judgment, for which execution should issue instanter, together with an equitable lien for said sum upon the subject real property; which will, of necessity, be subordinate to the existing deed of trust.
The cross-claim is denied, as is the motion for summary judgment requested during the trial. Plaintiffs' attorney will prepare a judgment pursuant to Chancery Rule 5.00 et seq.
Finding no error committed below, we affirm the judgment of the chancery court.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and BANKS, JJ., concur.
McRAE, J., not participating.