938 So.2d 899 (2006)
EAGLE MANAGEMENT, LLC, Appellant
v.
Wendell PARKS, Tammie Parks and Alanco Realty Appellees.
No. 2005-CA-01812-COA.
Court of Appeals of Mississippi.
October 3, 2006.
*900 Michael R. Wall, attorney for appellant.
Omar D. Craig, Goodloe Tankersley Lewis, Oxford, attorneys for appellees.
EN BANC.
ISHEE, J., for the Court.
¶ 1. Eagle Management, LLC (Eagle) originally filed suit in the Chancery Court of Lafayette County against Wendell Parks, Tammie Parks, and Alanco Realty, (collectively referred to as "Parks"), alleging breach of contract, *901 fraud, and negligent misrepresentation arising out of Eagle's attempt to purchase sixty condominium units from Wendell.[1] The suit was later transferred to the Circuit Court of Lafayette County. The circuit court granted Parks' motion to dismiss pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure. Aggrieved, Eagle appeals asserting numerous issues for this Court's review. Finding no error, we affirm.

FACTS
¶2. On or about March 10, 2004, Eagle, through its managing member, Dino Grisanti, entered into negotiations with Parks to purchase a sixty-unit condominium project in Oxford, Mississippi known as "No. 1 Anderson Place." Also on March 10, Eagle prepared, signed, and delivered a contract for the purchase and sale of real property to Tammie, offering to purchase No. 1 Anderson Place for $3,230,000. On March 11, 2005, Tammie informed Grisanti that Wendell reviewed the contract and wanted to make two amendments.[2] Grisanti agreed to the proposed amendments. Wendell prepared and signed a counter offer, which incorporated the two amendments, as well as the terms and conditions of the original contract. Tammie subsequently informed Grisanti that the contract had been signed and that it would be delivered. In fact, the contract for the purchase and sale of real property had not been signed. Neither the unsigned contract for the purchase and sale of real property, nor the signed counter offer, was delivered to Grisanti.
¶3. Without receiving a signed contract from Parks, Grisanti contacted potential investors and began negotiating the resale of No. 1 Anderson Place. On March 12, 2005, the Bert Allen Group traveled from Gulfport, Mississippi to meet with Grisanti and view the condominium units. After inspecting the units, the Bert Allen Group offered to purchase the property from Eagle for a total purchase price of $3,930,000. Later that day, Tammie informed Grisanti that Wendell had received another offer for No. 1 Anderson Place; the Bert Allen Group subsequently purchased the property from Wendell for the sum of $3,600,000.
¶4. On March 15, 2005, Eagle filed suit against Parks in the Chancery Court of Lafayette County alleging damages for breach of contract, or equitable estoppel, as well as fraud and negligent misrepresentation. Eagle sought compensatory damages in the amount of $700,000, as well as unspecified punitive damages. On April 18, 2005, Wendell filed a motion to dismiss pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure. He asserted that the facts alleged in Eagle's complaint violated the statute of frauds, or Mississippi Code Annotated section 15-3-1(c) (Rev. 2003). On May 4, 2005, Tammie and Alanco Realty filed a motion to dismiss; they also asserted that Eagle's claims were barred by the statute of frauds because there was never a signed contract. On May 26, 2005, Tammie and Alanco Realty filed a supplemental motion to dismiss asserting that Eagle could prove neither detrimental reliance on any allegedly fraudulent statement, nor recoverable damages; Wendell filed a similar supplemental response *902 on June 14, 2005. The suit was transferred to the Circuit Court of Lafayette County on June 21, 2005.
¶5. After a hearing on the motions to dismiss, the circuit court entered an opinion and judgment dismissing Eagle's complaint with prejudice on August 17, 2005. Regarding Eagle's breach of contract claim, the court found that, pursuant to Mississippi Code Annotated section 15-3-1, a contract for the sale of land must be in writing. Consequently, the court found Wendell could not be liable for breach of contract because it was undisputed that he never signed the contract for the sale of No. 1 Anderson Place. The circuit court further found that Eagle's claim for equitable estoppel must fail because the lost profits alleged by Eagle were not the result of statements made by Parks, but were the result of Parks entering into a contract with the Bert Allen Group instead of entering into a contract with Eagle. Similarly, the court found that Eagle failed to state a claim as to fraud and negligent misrepresentation because the complaint failed to "allege any damages directly flowing from the false statement by Wendell Parks and Tammie Parks."
¶6. Aggrieved by the court's decision, Eagle appeals asserting the following issues for this Court's review:
I. Whether the court erred in finding that it was undisputed that the contract between Eagle and Wendell was never signed.
II. Whether the court erred in finding that no contract existed between the parties.
III. Whether the court erred in finding that the doctrine of equitable estoppel was not applicable in the event that there was not a contract between the parties.
IV. Whether the court erred in dismissing Eagle's fraud and negligent misrepresentation claims.
V. Whether the court erred in finding that Eagle's complaint failed to state a cause of action for which relief could be granted.

STANDARD OF REVIEW
¶7. A motion to dismiss pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure tests the legal sufficiency of the complaint. Varvaris v. Perreault, 813 So.2d 750, 752(¶4) (Miss.Ct.App.2001) (citing Fortenberry v. City of Hattiesburg, 758 So.2d 1023(¶12) (Miss.Ct.App.2000)). "In order to grant this motion there must appear to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved in support of the claim." Id. A motion for dismissal under Rule 12(b)(6) raises an issue of law. Little v. Miss. Dep't of Human Servs., 835 So.2d 9, 10-11(¶5) (Miss.2002) (citing Tucker v. Hinds County, 558 So.2d 869, 872 (Miss. 1990)). This Court conducts de novo review on questions of law. Id. (citing UHS-Qualicare, Inc. v. Gulf Coast Community. Hospital, Inc., 525 So.2d 746, 754 (Miss.1987)).

ISSUES AND ANALYSIS
I. Whether the court erred in finding that it was undisputed that the contract between Eagle and Wendell was never signed.
¶8. Eagle asserts that the trial court ruled that there was no valid and binding contract between Eagle and Wendell without ever viewing the original contract to determine whether or not it had been signed. Eagle further asserts that the trial court knew that Wendell refused to produce the original contract, despite numerous requests for its production. Consequently, Eagle asserts that the trial *903 court committed substantial error by ruling on the issue without the benefit of knowing whether or not Wendell had in fact signed the contract.
¶9. We find that this issue is procedurally barred, as Eagle has failed to cite any legal authority in support of its position. It is the appellant's duty "to provide authority in support of an assignment of error." United Plumbing & Heating Co. v. Mosley, 835 So.2d 88, 92(¶8) (Miss.Ct.App.2002) (quoting McNeil v. Hester, 753 So.2d 1057, 1075(¶65) (Miss.2000)). Failure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment. Mosley, 835 So.2d at 92(¶8) (citing Powell v. Cohen Realty, Inc., 803 So.2d 1186, 1190(¶5) (Miss.Ct.App. 1999)). Consequently, we decline to address this issue.
II. Whether the court erred in finding that no contract existed between the parties.
¶10. Citing Central Shoe Co. v. J.P. Conn & Co., 160 Miss. 151, 133 So. 126 (1931), Eagle asserts that the contract for the purchase and sale of real property combined with the counter-offer constituted a valid and binding contract as to Wendell.[3] In Central Shoe, the court held that, in order to satisfy the statute of frauds, a written contract need not be in one writing, but may be in several writings necessarily connected with each other. Id., 160 Miss. at 155-56, 133 So. at 127. The court further held that "[i]f a paper signed by the party sought to be charged makes such reference to another writing as that, construing them together, all the terms of the bargain are expressed, it is sufficient under the statute, and parol evidence is admissible to identify the paper referred to and apply the reference." Id., 160 Miss. at 156, 133 So. at 126.
¶11. Although we agree that a contract may consist of several writings, we are not persuaded by Eagle's logic as applied to the facts of this case. The record reveals that Wendell did not sign the contract for purchase and sale of real property. Moreover, the counter offer prepared and signed by Wendell specifically stated that "[t]he offer to purchase the real property . . . made by [Eagle] . . . is not acceptable in its present form, but the following counter-offer is hereby submitted." Thus, Wendell specifically rejected Eagle's offer as it was set forth in the contract for purchase and sale of real property. Furthermore, the counter-offer was never delivered to Eagle for its signature. Consequently, we find that the circuit court did not err in finding that no valid contract existed between the parties. This issue is without merit.
III. Whether the court erred in finding that the doctrine of equitable estoppel was not applicable in the event that there was not a contract between the parties.
¶12. Equitable estoppel generally defined as "the principle by which a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed." Dubard v. Biloxi H.M.A., Inc., 778 So.2d 113, 114(¶5) (Miss.2000) (quoting Koval v. Koval, 576 So.2d 134, 137 (Miss.1991)). "The doctrine of equitable estoppel may be used *904 to enforce an oral contract which would otherwise be unenforceable under the statute of frauds." Powell v. Campbell, 912 So.2d 978, 982(¶12) (Miss.2005) (citing Koval v. Koval, 576 So.2d 134, 137 (Miss. 1991)). Nonetheless, equitable estoppel "should only be used in exceptional circumstances and must be based on public policy, fair dealing, good faith, and reasonableness." Id. (citing PMZ Oil Co. v. Lucroy, 449 So.2d 201, 206 (Miss.1984)).
¶13. A party asserting a claim for equitable estoppel must assert the following: (1) belief and reliance on some representation, (2) change of position as a result thereof, and (3) detriment or prejudice caused by the change of position. Cothern v. Vickers, Inc., 759 So.2d 1241, 1249(¶19) (Miss.2000) (citing Covington County v. Page, 456 So.2d 739, 741 (Miss.1984)). Eagle maintains that it changed its position in reliance on the representation of Parks that Wendell had signed the contract. Eagle further maintains that it would have never contacted the Bert Allen Group had Parks not made this misrepresentation. Consequently, Eagle urges this Court to "force [Parks] to be accountable for [their] actions and untruths" by reversing the decision of the circuit court.
¶14. The circuit court found that Eagle failed to state a claim for equitable estoppel because he failed to allege that he suffered any damages as a result of the allegedly untrue representations of Parks. The court further found that the damages alleged by Eagle did not arise from Eagle's dealings with Parks, but from Wendell's decision to enter into a contract with the Bert Allen Group, rather than Eagle. We agree.
¶15. We find Eagle's negotiations with the Bert Allen Group and others regarding the resale of the property to be insufficient facts to support Eagle's allegation that it changed its position to its detriment. Eagle did not assert that it expended funds negotiating with the potential investors as a result of Parks' representations. Instead, Eagle asserted that, had it been able to resale the property to the Bert Allen Group, it would have realized a profit of $700,000. Consequently, we find that the circuit court did not err in declining to employ the doctrine of equitable estoppel.
IV. Whether the court erred in dismissing Eagle's fraud and negligent misrepresentation claims.
¶16. Under this assignment of error, Eagle asserts that either the court failed to recognize that a valid contract existed between the parties or, in the alternative, the doctrine of equitable estoppel should have been invoked. Thus, Eagle further assets that, because it was the rightful owner of the property, and because the Bert Allen Group initially agreed to purchase the property from Eagle, Eagle sustained damages for lost profits that it was legally entitled to receive. Consequently, Eagle maintains that the trial court wrongfully determined that Eagle's claims for fraud and negligent misrepresentation were deficient because they failed to allege proximate damages.
¶17. In order to properly bring a claim for fraud, the plaintiff must assert the following:
(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) the speaker's intent that it should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.
Spragins v. Sunburst Bank, 605 So.2d 777, 780 (Miss.1992) (citing Bank of Shaw v. *905 Posey, 573 So.2d 1355, 1362 (Miss.1990)). In order to bring a claim for negligent misrepresentation, the plaintiff must assert the following:
(1) a misrepresentation or omission of fact; (2) the materiality or significance of the representation or omission; (3) failure to exercise reasonable care on the part of the defendant; (4) reasonable reliance on the misrepresentation or omission; and (5) damages as a direct and proximate result of such reasonable reliance.
Little v. Miller, 909 So.2d 1256, 1260(¶16) (Miss.Ct.App.2005) (citing Spragins, 605 So.2d at 780)).
¶18. As stated previously, we find that no contract existed between the parties; because the contract was unsigned, it failed to satisfy the statute of frauds. Furthermore, we find that the circuit court was correct in its determination that the damages alleged by Eagle did not arise from any representation of Parks, but arose from Wendell's decision to enter into a contract with the Bert Allen Group instead of Eagle. Consequently, the circuit court did not err in finding that Eagle failed to state a claim for fraud and negligent misrepresentation. This issue is without merit.
V. Whether the court erred in finding that Eagle's complaint failed to state a cause of action for which relief could be granted.
¶19. Because we find that no contract existed between the parties, and that the trial court did not err in finding that Eagle failed to state a claim for fraud and negligent misrepresentation, we also find that this issue is without merit.
¶20. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS AND ROBERTS, JJ., CONCUR. SOUTHWICK, J., CONCURS IN RESULT ONLY. BARNES, J., NOT PARTICIPATING.
NOTES
[1] Wendell owned the property in question; Tammie acted as his real estate agent. Alanco Realty is a sole proprietorship owned by Tammie.
[2] The first amendment stated, "[s]eller is to retain all Security Deposits currently being held on the units leased in the amount of $7,900." The second amendment stated, "[s]eller retains the right to back out of this offer if his Cash due to seller at closing is not at least $100,000."
[3] Wendell's initials appear on the contract for the purchase and sale of real estate beside two provisions that he struck through, which represented the two amendments listed in the counter-offer.