# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CC-02103-SCT

***MAYOR & BOARD OF ALDERMEN, CITY OF
CLINTON, MISSISSIPPI***

***v.***

***SCOT WELCH AND MARY WELCH***

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2003 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | KENNETH R. DREHER |
| ATTORNEY FOR APPELLEES: | STEVEN H. SMITH |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 12/02/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     The Mayor and Board of Aldermen of the City of Clinton (the "City") seek reversal

of Hinds County Circuit Court judgment allowing Scot Welch and Mary Welch (the

Welches") to keep a tree house in their front yard.  The City claims the tree house violates

its zoning ordinance (the "Ordinance").  The Welches claim the Ordinance is not clear, does

not prohibit their tree house, and -- in any case -- does not apply to their tree house, since

they had permission from the City to build it.

¶2.     Apparently, this case has struck a chord with the public.  At oral argument, our

courtroom was full.  The City informed us in its brief that the Welches maintain a website

supporting their cause. We are also informed that the parties have invested over $50,000 in attorney fees and litigation costs. In an editorial, the *Clarion-Ledger* – characterizing this litigation as a "cute case" of "[k]ids fighting big, bad city hall to save their treehouse, . . ." – nevertheless admonished this Court to "think twice before undermining zoning in Mississippi." The Clarion-Ledger, Aug. 7, 2004, at 11A.

¶3. We offer this preface to our decision today, only to assure the City, the Welches, the *Clarion-Ledger*, and those members of the public who are interested, that this case has not been decided by popular opinion, but rather by applying the law to the facts presented to us. When (as here) the law requires us to invalidate, set aside, or otherwise prevent enforcement of a law or ordinance, we are persuaded that, to do otherwise, would undermine the constitution and our oaths of office.

**BACKGROUND FACTS**

¶4. The clouds of this "perfect storm" began to gather in late 1996, when the Welches moved to 218 Kitchings Drive in Clinton. Scot (an electrical engineer) and Mary wanted a tree house in their front yard, so Mary sought approval from the City's building inspector and zoning official, Julion Lowther. According to Mrs. Welch's uncontradicted testimony, Lowther approved the project and indicated that no permit was required. Shortly thereafter, construction of the tree house began and was completed over the next several years at a cost to the Welches of over $5,000.00.

2

¶5. On September 22, 1999, the first of two building inspections[1] by the City's building inspector took place at the Welches' home. The second[2] took place on September 26, 2000. Neither inspector complained about, or objected to, the tree house.[3] Indeed, the Welches claim, and the City does not dispute, that prior to the spring of 2002, there was no indication from the City or anyone else of a problem with, or objection to, the tree house.

¶6. Then, in early April, 2002, the City's Zoning Administrator,[4] Gary Ward, investigated a telephone complaint from a citizen, and determined that the Welches' tree house violated Section 401.05 of Clinton's zoning ordinance.

¶7. Ward sent letters in April and May, 2002, advising the Welches of the alleged violation and threatening them with legal action should they refuse to move the tree house. The Welches obtained legal counsel and appealed Ward's decision to the Board of Aldermen, requesting either a reversal of the decision, or a conditional use/special exception and/or a non-conforming use designation under the Ordinance.

¶8. A public hearing was held on July 23, 2002, on the issues of conditional use/special exception, and/or non-conforming use, before the Planning and Zoning Commission, which voted to send the matter to the Mayor and Aldermen without a recommendation.[5]

---

[1]This inspection involved an electrical service panel upgrade.

[2]This inspection by building inspector Roger McNeese was of the Welches' garage enclosure.

[3]Based upon the evidence in the record before us, we take judicial notice that the inspectors could not have entered the Welches' property without encountering the tree house.

[4]By this time, Lowther had passed away.

[5]Section 2411.03 of the City's current Ordinance states, inter alia: "Only in case of a tie vote may an application be forwarded to the Mayor and Board of Aldermen 'without

3

¶9.     On August 6, 2002, the Mayor and Aldermen, in successive 6-1 votes, (1) upheld Ward's finding that the tree house violated the Ordinance, and (2) denied the Welches' request for a conditional use/special exception and/or non-conforming use.  Aggrieved, the Welches filed a bill of exceptions in the Circuit Court of Hinds County, and Circuit Court Judge Tomie T. Green reversed the Mayor and Aldermen, holding that the City could not force the Welches to remove the tree house.  The City now appeals Judge Green's decision to this Court.

## ANALYSIS

¶10.    We begin our analysis by affirming three well-settled principles of judicial review.  First, the circuit court's role was not as a trier of fact, but rather as an appellate court.  *Board of Aldermen v. Conerly*, 509 So. 2d 877, 885 (Miss. 1987).  Thus, we look beyond the decision of the circuit court and examine the decision of the City.

¶11.    Second, actions of a deliberative public body such as the Mayor and Aldermen will not be set aside unless found to be arbitrary and capricious.  *Broadacres, Inc. v. City of Hattiesburg*, 489 So. 2d 501, 503 (Miss. 1986); *Sanderson  v. City of Hattiesburg*, 249 Miss. 656, 163 So. 2d 739, 741 (1964).

¶12.    Third, we recognize a presumption of validity of a governing body's enactment of a zoning ordinance.  In attempting to hold such ordinances invalid, either per se or as applied, the burden of proof lies with the challenger and, where the matter in issue is "fairly debatable," we will not disturb the governing body's action.  *Petition of Carpenter v. City of Petal*, 699 So. 2d 928, 932 (Miss. 1997).  Having established the Welches' difficult

recommendation.'"  We are not told how the City avoided complying with its own Ordinance.

4

burden, we now turn to the City's zoning Ordinance, beginning with the version in force when construction of the tree house began.

*The prior zoning ordinance.*

¶13.    Section 410 of the City's 1976 zoning ordinance, which was in force when the Welches began construction of the tree house, provided that "[n]o accessory building or use shall be located within the required front yard OF ANY MAIN BUILDING OR USE IN ANY DISTRICT. . . ." Having prohibited "accessory buildings and uses" in front yards, the early ordinance then, in Section 201, defined "accessory building or use" as "[a]ny building or use which is subordinate or incidental to the main building or dominate use of the lot or premises." Although this ordinance is not at issue, it is important to note that it provided a definition of the thing it prohibited.

*The present zoning Ordinance.*

¶14.    As an initial observation, we wish to state that a zoning ordinance which simply prohibits accessory buildings in the front yards of residences would be difficult to challenge on constitutional grounds, even if no definition of "accessory building" were provided. That is to say, the term "accessory building" does not seem so vague or unclear as to render it unenforceable as a matter of law. However, the City's Ordinance goes much further. It also prohibits something it calls "uses." To further complicate matters, the City inexplicably removed from its Ordinance the definition of "accessory building," and began applying to "accessory building" a vague definition of "structure." Thus, the Ordinance not only prohibits accessory buildings, but it also prohibits "uses."

¶15.    The Welches are charged with violation of the City's Ordinance which was enacted in 1997.  In its brief, the City sets forth with clarity its position in this case:

> The present Zoning Ordinance defines "accessory structure or use" in §201 and prohibits them in front yards of any district in §401.5.

¶16.    This statement is not completely accurate.  Although the Ordinance does, in fact, define "accessory structure or use" in §201, it does not prohibit them in §401.5.  In fact, that section does not even mention "accessory structure or use."  The City's Ordinance does not inform its citizens that the City applies the definition of "accessory structure or use" to "accessory buildings or uses."  Nor are we told why this is done.  In any case, we must proceed to analyze §401.5, as defined by §201, and as applied to the Welches, to determine whether the Ordinance may be enforced against the Welches' tree house.

¶17.    The Ordinance was adopted in 1997, shortly after construction of the tree house began.  Section 401.05 of this new Ordinance provides that "[a]ccessory buildings or uses are PROHIBITED in the front yard of ANY district."  Although the City continued to prohibit "accessory buildings or uses," as it had in the prior ordinance, it removed the definition of "accessory building or use" from Section 201 of the prior ordinance, and replaced it with a new Section 201.  This new section provides no definition for "accessory building or use," but instead provides a definition of "accessory structure or use," which is

> [a]ny detached structure or use which is subordinate or incidental to the main building or dominate use of the lot or premises, excluding driveways, sidewalks, and fences.

¶18.    Thus, a citizen can see that the Ordinance prohibits an "accessory building or use." But in order to know what that means, the citizen must somehow know (without being told)

6

to go to the definition of "accessory structure or use," where they will learn that it is actually a "detached structure or use" that is prohibited. The trial doesn't end here, for the citizen must then go to the definition of "detached structure." Stated another way, the Ordinance says it prohibits "accessory buildings and uses," but it actually doesn't. It prohibits "detached structures;" and it prohibits "uses." Since the Ordinance prohibits two things: any "detached structure," and any "use,"it remains only to determine whether the tree house constitutes a "detached structure" or a "use."

¶19. According to the Ordinance, a "detached structure" is "anything constructed or erected, the use of which requires a fixed location on the ground, or attached to something having a fixed location on the ground." A "use" is "the specific purpose for which land or a building is designed, arranged, intended, or for which it is or may be occupied or maintained. . . ." These are the things prohibited in the front yards in Clinton.

¶20. In order to proceed with the analysis, we must first determine whether those terms, as used in the Ordinance and enforced by the City, are so vague and unclear as to render them unenforceable. If the Ordinance lacks sufficient clarity to advise citizens, including the Welches, of what is allowed and what is prohibited, it is unconstitutionally vague, and cannot be enforced. This leads us to a discussion of "vagueness."

*Vagueness – the concept*

¶21. The state and federal governments, and their political subdivisions, are trusted with immense powers over the citizens living withing their respective jurisdictions. Among the greatest of these is the power to regulate and control a citizen's use of private property. When a governmental entity presumes to prohibit otherwise legal activity on a citizen's

7

private property, the constitution requires only that there be a legitimate governmental purpose. *City of Jackson v. McPherson*, 162 Miss. 164, 138 So. 604 (1932), citing **Village of *Euclid v. Ambler Realty Co*.**, 272 U.S.365, 47 S. Ct. 114, 71 L. Ed. 303 (1926). However, the restriction must be reasonably clear, enabling a citizen to understand what is allowed, and what is not. *See generally* **City of Chicago v. Morales**, 527 U.S. 41, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999).

¶22. There is no issue here concerning the legitimate governmental purpose of Clinton's Ordinance. The same cannot be said of its clarity. The City seems to find sufficient clarity in the prevention of a "use" in the Welsh's front yard. Furthermore, the City appears to be untroubled by the notion that city officials who take office in Clinton long after the Welches' children are grown, may apply the Ordinance to require citizens to remove from their front yards, not just tree houses, but anything which has been constructed and attached to the ground; or attached to something else which is attached to the ground. In order to learn why should we not require city officials to make such decisions without benefit of a clear, unambiguous ordinance, we need only move a few feet from the front yard, into the street, for an illustration.

¶23. Few would question the vagueness of a city ordinance which provided no particular speed limits on the various streets of the City, but rather provides that citizens may not drive "too fast" on the streets of Clinton. Seemingly a good ordinance at first pass, since most reasonable persons would agree that no one should drive "too fast." However, the concept of what is, and is not, "too fast" would certainly differ from citizen to citizen. More

troubling, however, is the certainty that the concept will differ from one police officer to the next.

¶24.    Additionally, we must express concern for those required by law to interpret the ordinance. As in the example, a vague, ambiguous ordinance places an unfair burden upon the judge or city official required to interpret the terms of the ordinance. Conversely, a clear, unambiguous ordinance eliminates the danger of conflicting standards. Reasonable people can disagree whether 40 mph exceeds a speed limit of "too fast," but all must agree that 40 mph exceeds a speed limit of 30 mph.

¶25.    It should be enough to say that citizens are entitled to fair notice of the meaning and breath of ordinances which restrict their liberty and the use of their property.

*Vagueness– prior case law*

¶26.    The concept of vagueness is not new. We are guided by a legal principle which was easily recognized and agreed by counsel for the City at oral argument; that is, the Ordinance cannot be enforced unless it provides clear notice and sufficiently definite warning of that which is prohibited, and that which is allowed. The authorities for this proposition abound.

¶27.    A governmental enactment is impermissibly vague where it fails to provide persons of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. ***Hill v. Colorado***, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (citing ***City of Chicago v. Morales,*** 527 U.S. 41, 56-57, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (ordinance prohibiting anyone from remaining "in any one place with no apparent purpose" held unconstitutionally vague). *See also **Smith v. Goguen***, 415 U.S. 566, 582, 94 S.Ct. 1242, 1252, 39 L.Ed.2d 605 (1974) (term "treats contemptuously" the flag of the United States held

9

void for vagueness); ***Connally v. General Constr. Co***, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926) ("not less than the current rate of per diem wages in the locality" so uncertain as to be unconstitutional); ***Hyatt v. Town of Lake Lure***, 225 F. Supp. 2d 647, 662-63 (W.D.N.C. 2002) (term "shoreline" held unconstitutionally vague, as applied to the plaintiff); ***Lionhart v. Foster***, 100 F.Supp. 2d 383, 389-90 (E.D. La. 1999) (term "annoy" within the statute held unconstitutionally vague); ***Central Ave. Enterprises, Inc. v. City of Las Cruces***, 845 F.Supp. 1499, 1503-04 (D.N.M. 1994) (ordinance requiring special use permit in order to operate an adult bookstore or adult amusement establishment unconstitutionally vague regarding the terms "specified sexual activities or specified anatomical areas"); ***People v. Lee***, 803 N.E.2d 640 (Ill. App. Ct. 2004) (ordinance which permitted arrest under "circumstances manifesting the purpose to engage in drug-related activity" held unconstitutional for vagueness); ***Nichols v. City of Gulfport***, 589 So. 2d 1280 (Miss. 1991) (ordinance prohibiting "unnecessary or unusual noises . . ." declared void for vagueness). ***Genesis of Mount Vernon, N.Y., Inc. v. Zoning Bd. of Appeals***, 579 N.Y.S.2d 968, 974 (N.Y. Sup. Ct. 1991) (ordinance which lacked clear criteria by which to distinguish a "boarding house" from a "family use" held unconstitutionally vague). ***People v. Donato***, 685 N.Y.S.2d 394, 397 (N.Y. City Ct. 1998) (city ordinance prohibiting "unnecessary animal noise" held unconstitutionally vague);

¶28.     In *Nichols*, this Court held that a city ordinance prohibiting "unnecessary or unusual noises . . . which either annoys, injures or endangers the comfort, repose, health or safety of others . . ." was so vague that it violated "the first essential of due process of law." ***Id***. at

1282. Presiding Justice Dan M. Lee, speaking for a unanimous Court, stated that "[t]he law, of course, should give fair notice of offending conduct or else the law is void for vagueness."

*Id.*

¶29.  Writing for the U.S. Supreme Court in ***Connally***, Justice Sutherland stated:

> That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

***Connally***, 269 U.S. at 391, 46 S. Ct. at 127, 70 L. Ed. at 328, *citing **Int'l Harvester Co. v. Kentucky***, 234 U.S. 216, 221, 34 S. Ct. 853, 58 L. Ed. 1284 (1914); ***Collins v. Kentucky***, 234 U.S. 634, 638, 34 S. Ct. 924, 58 L. Ed. 1510, (1914).

¶30.  Similarly, a court has declared void a statute requiring a railway company to run sufficient cars to accommodate passengers "without crowding."  ***United States v. Capital Traction Co***., 34 App. D. C. 592, (D.C. Cir. 1910).  The court reasoned that, "[w]hat may be regarded as a crowded car by one jury may not be so considered by another.  What shall constitute a sufficient number of cars in the opinion of one judge may be regarded as insufficient by another. . . . There is a total absence of any definition of what shall constitute a crowded car.  This important element cannot be left to conjecture. . . ."  *Id.*

¶31.  In ***Grayned v. City of Rockford,*** 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the United States Supreme Court stated that "[v]ague laws may trap the innocent by not providing fair warning," and that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them."

¶32.     Thus, it is not a new or novel concept that we now apply to the facts of the case before us.

*Vagueness – practical application*

¶33.     Against this rich, lengthy, broad and consistent background of federal and state precedent, we now analyze the City's Ordinance for vagueness.

¶34.     We understand that ordinances are often drafted as broadly as possible. This prevents having to draft a specific ordinance for each specific thing a city wishes to prohibit – including some thing which are unforseen. This points out the dilemma faced in drafting many prohibitive ordinances. On the one hand, the ordinance must be broad enough to include a long list of similar things which cannot possibly be specifically included within the ordinance. On the other hand, it must not be so broad as to render its meaning vague, unclear and capable of unintended consequences. When an ordinance falls into the "vague" category, citizens are left to the mercy, discretion and caprice, of a governmental official as to the use of their property.[6]

¶35.     There are several factors which lead to our conclusion and decision in the case before us. First, we note that, for two decades, the City's Ordinance prohibited (and defined) "accessory buildings" in the front yard at 218 Kitchings Drive in Clinton. For reasons we are not told, however, the definition of "accessory buildings" was removed in April, 1997. We are left to wonder whether to attach some significance to this unusual act.[7]

---

[6]Today's official who hates birds may easily exclude all bird houses under this Ordinance; while tomorrow's official who loves birds may allow them.

[7]We find it unusual that the City would continue to prohibit a specific thing, but remove from its Ordinance the definition of the thing prohibited. It would be far more understandable

¶36. Additionally, the City provides no notice to the public that it utilizes the definition of "accessory structure or use" to define "accessory building or use." The City provides to us no explanation why this definition is used, and why the public is not informed of it.

¶37. Finally, according to the Ordinance, an "accessory structure" can be either a "detached structure" or a "use." We are then told there is no definition of "detached structure," but there is a definition of "structure" which is "**anything constructed or erected, the use of which requires a fixed location on the ground, or attached to something having a fixed location on the ground**." We find the application of this definition to Section 401.05 of the City's Ordinance to be unconstitutionally vague.

¶38. We are also told that a "use" (a term also used to prohibit the tree house) is "***[t]he specific purpose for which land or a building is designed, arranged, intended, or for which it is or may be occupied or maintained*** . . . ." We further find the application of this definition to Section 401.05 of the City's Ordinance to be unconstitutionally vague.[8]

¶39. With these definitions, the public is left to either guess what is an "accessory building," and what is not, or appeal to the unfettered discretion of a City official who, on an ad hoc basis, decides the "accessory building" *du jour*.[9] This not only deprives the citizen

---

had the City never provided a definition.

[8]The City makes no attempt to address or justify the prohibition of "use." Nor does it suggest how "use," as defined in the Ordinance, could be understood by anyone.

[9]We are not told how, when, or why, the City decided to use the definition of "accessory structure" to define "accessory building." There is no requirement that the City continue to use this definition, and no assurance that it will not begin to use another, without any notice to the citizens whose property it proposes to regulate. This is the very essence of a vague, arbitrary ordinance.

of fair notice, but also unfairly requires the City official to make a decision without providing a clear standard or guideline.

¶40. The City would simply trust its building inspectors, from year to year, to make fair decisions while enforcing a vague, ambiguous Ordinance. One building inspector might do just that. Another, however, might not.

¶41. It bears repeating that we would be less troubled by an ordinance which simply prohibited accessory buildings in the front yards of residences. We find the term, "accessory buildings," when used in conjunction with a residence, to be reasonably clear and understandable. However, the City's Ordinance does more. Much more. It also prohibits "use." As discussed supra, a review of the City's definition of "use" leaves us bewildered as to why the City would want to prohibit it. To demonstrate the vagueness problem, we provide a hypothetical application of the Ordinance from a citizen's viewpoint in Appendix A, hereto.

¶42. The City provides us no argument or authority which rescues the Ordinance from our finding of vagueness; nor does it provide authority to contradict the numerous cases cited herein which constitutionally prohibit the enforcement of vague statutes and ordinances; nor does it address or explain the specific flaws[10] we find with the Ordinance, and have discussed herein.

   *Equitable estoppel (laches)*.

---

   [10]Such flaws include the Ordinance's prohibition of "uses" which - according to the City's own definition -- prohibits a property owner from using his or her front yard for "[t]he specific purpose for which land or a building is designed, arranged, intended, or for which it is or may be occupied or maintained." The literal application of this prohibition would seem absurd.

14

¶43. The Welches claim the City should be equitably estopped from requiring removal of the tree house. Equitable estoppel is defined generally as

> the principle by which a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed.
>
> The doctrine of estoppel is based upon the ground of public policy, fair dealing, good faith and justice, and its purpose is to forbid one to speak against his own act, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon.

*Koval v. Koval*, 576 So. 2d 134, 137 (Miss. 1991). Cities are not immune from the doctrine of equitable estoppel. This Court has held that "the state and its political subdivisions 'may be equitably estopped under the proper circumstances.'" *Hill v. Thompson*, 564 So. 2d 1, 14 (Miss. 1989) *citing Board of Trustees of Monroe County Bd. of Educ. v. Rye*, 521 So. 2d 900, 908-09 (Miss. 1988); *Suggs v. Town of Caledonia*, 470 So. 2d 1055 (Miss. 1985); *Covington County v. Page*, 456 So. 2d 739 (Miss. 1984); *State v. Stockett*, 249 So. 2d 388 (Miss. 1971).

¶44. The Welches' claim of estoppel is based primarily upon Mrs. Welch's testimony that she received verbal approval to build the tree house in 1996 from the City's building inspector/zoning official, Julion Lowther. The City makes light of Mrs. Welch's uncontradicted testimony, and questions her veracity. After carefully reviewing the record before us, we conclude that there is little reason or basis for disputing Mrs. Welch. And there is much to support her.

15

¶45. After receiving approval from Lowther, construction began and continued for several years in broad daylight, and plain view of the public and the City. It is not likely, we think, that Mrs. Welch is being untruthful. Instead, we are persuaded that Lowther approved of the tree house, as Mrs. Welch testified. This would certainly explain why, for over five years, the City took no action to halt construction, or have the tree house removed. It would also explain why there was no complaint or comment from either of the City's inspectors who visited the Welches' property to make inspections during the five-year period and walked within the shadow of the tree house.

¶46. We realize that the City cannot notice or be aware of every code and zoning violation within its jurisdiction. But this alleged violation is a $5,000.00 tree house in a clump of sweetgum trees in a front yard on a public street, in plain, open, obvious sight. Beginning at least in April, 1997, the City's zoning Ordinance required the Zoning Administrator to "[m]ake periodic checks for violations . . . ." Over a five-year period (assuming such required "checks" were, in fact, made), the City knew or should have known about the tree house.

¶47. Mary's testimony, Lowther's approval, a substantial investment by the Welches, and the City's apparent acquiescence for five years, led Judge Green to apply the doctrine of equitable estoppel, preventing the City from requiring removal of the tree house. The City warns us of dire consequences which will surely spring from the trial court's ruling:

> What if a policeman or fireman had gone onto the Welch property or passed by on the street? . . . Under the reasoning of the Circuit Court, any city employee could agree to and bind the City to anything and any alleged observation by any city employee would impute knowledge to the city, thereby binding the City by the actions or inactions of its employees.

¶48.    This argument is either disingenuous, or blind to the facts presented in the record before us.  The City's Building/Zoning Inspector (not a policeman, fireman or some other city "employee") approved construction of the tree house.  Thereafter, the City sat by in silence while the Welches invested thousands of dollars in reliance on the approval.  Now, many years after completion of the tree house, the City seeks to enforce its ill-defined Ordinance.  The same Zoning Administrator who seeks to force the Welches to remove the tree house had a duty to make periodic checks of the property in the City for violations of the Ordinance.  This duty has existed at least since April, 1997.

¶49.    We have not been provided with a complete copy of the City's prior zoning ordinance. However, we were provided a complete copy of the 1997 Ordinance. Therein, the City vested its Zoning Administrator with certain powers and responsibilities.  Article XXIV provides:

### SECTION 2400 – PURPOSE OF THIS ARTICLE

It is the purpose of this Article to prescribe the legal devices and procedures for administering and enforcing this Ordinance and to define the duties, powers, limitations and scope of jurisdiction for the various persons and groups which are concerned with the administration and enforcement of this Ordinance.

### SECTION 2401 – DUTIES, POWERS, AND LIMITATIONS OF POWERS OF THE ZONING ADMINISTRATOR IN THE ADMINISTRATION AND ENFORCEMENT OF THIS ORDINANCE.

**2401.01 Duties of the Zoning Administrator:**

* * *

(b)      *Provide information to the public* on matters relating to zoning.

* * *

17

(l)      Make ***periodic checks for violations*** or investigate all complaints of violations of this Ordinance . . .

(M)    ***Report uncorrected violations*** to the Mayor and Board of Aldermen and recommend action to prevent or halt violations of this Ordinance.

                                              \* \* \*

(q)      ***Provide administrative interpretation*** as provided in Subsection 2401.02.

**2401.02 Administrative Interpretation by the Zoning Administrator:**
In the event there is a question as to the general intent or specific meaning of any provision of the Zoning Ordinance text, . . . the Zoning Administrator ***shall have the power*** to make such administrative decisions and interpretations. Such decisions or interpretations shall be made in writing by the Zoning Administrator.

(emphasis added).

¶50. We are somewhat troubled by the absence of written approval, as required by §2401.02 of the new Ordinance. However, we do not know whether written approval was required at the time Lowther approved the tree house. Additionally, even if it was, the requirement that the interpretation be in writing is a procedural requirement. We are reminded by the City in its brief that "it is the City which is vested with final authority for determining whether its procedural requisites have been met or, if it pleases, waiving them."[11]

***Thrash v. Mayor & Comm'rs of City of Jackson***, 498 So. 2d 801, 807 (Miss. 1986).

---

[11]The City cites this authority in explanation of its own procedural violation. See fn. 5 & accompanying text, *supra*.

¶51. We can provide little improvement to Circuit Judge Green's discussion of equitable estoppel in her Memorandum Opinion rendered in this case on July 23, 2003, which we incorporate herein:

> The record before [the Circuit Court] shows that the Welches' began construction of their treehouse prior to the effective date of Clinton's current zoning Ordinance, April 4, 1997. The Welches sought and obtained lawful permission/authorization to construct their treehouse from a city official authorized to render such a decision. While Clinton disagrees with the testimony and photographs depicting the time frame of the treehouse's initial construction, Clinton offered nothing into the record to rebut or contradict the Welches' proof.

> Inasmuch as the record tends to support the Welches' contention that they began building their treehouse prior to the adoption of the city's April 1997 Ordinance, the City's denial of the Welches' application for a non-conforming use must be examined to determine whether the city's actions were unreasonable, arbitrary, and capricious in its interpretation and application of its past and present zoning ordinances.

> In light of Mississippi law and the principles of agency and equitable estoppel, the doctrine of "equitable estoppel" is generally defined as "the principle by which a party is precluded from denying any material fact, induced by his words or conduct, upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was followed." Koval v. Koval, 576 So. 2d 134 (1991); PMZ Oil Co. v. Lucroy, 449 So. 2d 201 (Miss. 1984); Town of Florence v. Sealands, Lts., 759 So. 2d 1221 (Miss. 2000); and Walker v. City of Biloxi, 229 Miss. 890, 92 So. 2d 227, 229 (1957).

> The doctrine of estoppel is steeped in the foundations of public policy, fair dealing, good faith, and justice. Its purpose is to forbid one to speak against its own act, representations, or commitments to the injury of one to whom they were directed, and to whom they reasonably relied thereon. Koval, 576 So. 2d at 137.

> Under Mississippi law, "equitable estoppel" is a rule of equity which generally prevails over most other rules. In the appropriate cases, the doctrine operates to cut off the rights or privileges conferred by statute or even by the constitution. Koval, 576 So. 2d at 137 and 28 Am. Jur. 2d 647, §34.

When applying the doctrine of [equitable estoppel], "the test is whether it would be **substantially unfair** to allow a person to deny what he has previously induced another to believe and take action thereon." Koval, 576 So. 2d at 138 and PMZ Oil Co., 449 So. 2d at 201.

The City must be bound by Julion Lowther's interpretation that the Welches' treehouse did not fall into the classification of an "accessory building or use." Lowther was the City's employee – [its] agent and representative in the zoning office. His responsibility clearly required him to interpret city ordinances and to advise citizens properly. Additionally, though the City's building inspectors, it had knowledge of the existence of the treehouse, somewhat ratifying Lowther's interpretation.

The Welches testified that hundreds of hours and thousands of dollars have been spent in constructing their children's tree house. They believed and relied upon the City employees' representation and the actions or inaction that they could construct their treehouse in their front yard. It is undisputed that the Welches changed their position as a result of Lowther's interpretation. They moved forward to spend at least two (2) years and thousands of dollars to construct their "treehouse." The Welches have certainly suffered a detriment by relying on the City's actual and constructive knowledge and acquiescence in the construction of the Welches' treehouse.

In Walker v. City of Biloxi, supra, the Mississippi Supreme Court stated that "waiver estoppel or laches may operate under certain circumstances to preclude relief against zoning ordinances or regulations." The Court has also held that the State of Mississippi and its political subdivisions may, under appropriate circumstances, be equitably estopped from taking inconsistent positions. Hill v. Thompson, 564 So. 2d 1 (1989) and Town of Florence 7569 So. 2d 1221. In PMZ Oil Co. v. Lucroy, supra, our Supreme Court stated that "whenever in equity and good conscience, persons ought to behave ethically toward one another, the seeds for a successful employment of equitable estoppel have been sown."

¶52. In summary, we find for three reasons the City may not apply the Ordinance to require the Welches to remove the treehouse from their front yard. First, we agree with the Circuit Court's holding that the doctrine of laches applies to the facts of this case, and the City is equitably estopped from requiring removal of the tree house, based upon the City's

20

interpretation of Section 401.05 of its Ordinance. We also find Section 401.05 of the Ordinance to be unconstitutionally vague, as applied.[12] Finally, we find the City violated Section 2411.03 of its own Ordinance, which states, *inter alia*: "Only in case of a tie vote may an application be forwarded to the Mayor and Board of Aldermen 'without recommendation."

¶53. We do state, however, that our holding today is limited to the facts of this case. We find no fault with the City precluding "buildings," or even "accessory buildings" in the front or side yards of homes. However, when the City adds to the prohibition the term, "use;" and it employs definitions of "use" and "accessory structures" so broad and vague that virtually anything could fall within the Ordinance's purview, it crosses the constitutional line.

## CONCLUSION

¶54. For the reasons stated herein, we affirm the judgment of the Circuit Court of the First Judicial District of Hinds County prohibiting enforcement of section 401.05 of the Ordinance, as it is alleged to apply to the Welches' tree house.

¶55. **AFFIRMED**.

**COBB, P.J., EASLEY AND RANDOLPH, JJ., CONCUR. SMITH, C.J., CONCURS IN PART. CARLSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J., SMITH, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

**CARLSON, JUSTICE, DISSENTING:**

---

[12]Because we find the Ordinance may not be enforced, we need not reach the other issues raised by appellants.

¶56. Because the Mayor and Board of Aldermen of the City of Clinton (the City) had the authority to enforce what was a constitutionally valid ordinance, I respectfully dissent.

¶57. The standard for reviewing zoning cases is certain. This Court must determine whether the board acted in an arbitrary and capricious manner and whether its action was supported by substantial evidence. See *Broadacres, Inc. v. City of Hattiesburg*, 489 So.2d 501, 503 (Miss. 1986). This Court has also held that the circuit court acts as an appellate court in reviewing zoning cases and not as the trier of fact. See *Board of Aldermen v. Conerly*, 509 So.2d 877, 885 (Miss. 1987). A governing body's zoning ordinance is presumptively valid; thus, the burden of proof is on the party asserting its invalidity. Where the point at issue is "fairly debatable," this Court will not disturb the zoning authority's action. *Petition of Carpenter v. City of Petal*, 699 So.2d 928, 932 (Miss. 1997). Accordingly, a governing body's application and enforcement of zoning ordinances will not be set aside unless it is shown to be arbitrary, capricious, discriminatory, illegal or without substantial evidentiary basis. Id.

I.      Whether the circuit court applied the correct standard of review.

¶58. The City argues that the circuit court erred in 1) substituting its own opinion for that of the Mayor and Board of Aldermen, 2) failing to accept the City's findings and substituting it's own findings, and 3) ignoring the "fairly debatable" standard. I agree with the City's contentions.

¶59. We are bound to apply the law as written, and this Court thus cannot substitute its own judgment as to the wisdom and the soundness of the municipality's action. *Moore v. Madison County Bd. of Supervisors*, 227 So.2d 862 (Miss. 1969).

22

¶60. The scope of a reviewing court is limited. The order of the governing body of the municipality will not be set aside if its validity is fairly debatable. ***Sanderson v. City of Hattiesburg***, 249 Miss. 656, 163 So.2d 739, 741 (1964). Such an order will be upheld provided it is not "wholly unreasonable or an abuse of discretion, without any reasonably probable basis in the evidence." Id. The burden of proof lays with the opponent of such. Id.

¶61. In the instant case, the circuit court recognized the correct standard of review, but, in my opinion, failed to apply it. The circuit court's written opinion contains no clear analysis defining how the City acted arbitrarily and capriciously in its decision that the tree house is an accessory building. Instead, the circuit court reviewed Sections 200 and 401.05 of the City of Clinton's zoning ordinances, which define accessory buildings, and substituted its own opinion for that of the City. The court ruled that since the City's ordinances do not define "tree house" or prohibit the building of a "tree house" anywhere on a landowner's property, the tree house could not be classified as an accessory building.

¶62. Section 201 of Clinton's zoning ordinance defines a "structure" as follows:

> Anything constructed or erected, the use of which requires a fixed location on the ground, or attached to something with a fixed location on the ground. Among other things, structures include buildings, mobile homes, walls, fences, and billboards, but shall not include "Transient Trailers (Travel Trailers)" as defined herein. The term structure shall be construed as if followed by the words "or part thereof."

> Section 201 further defines and "accessory structure or use" as follows:

> Any detached structure or use which is subordinate or incidental to the main building or dominant use of the lot or premises, excluding driveways, sidewalks, and fences.

> Section 401.05 of Clinton's current zoning ordinance reads as follows:

23

Accessory Buildings or Uses: Accessory buildings or uses are PROHIBITED in the front yard and side yard of ANY district.

¶63. The City concluded that although the zoning ordinance did not specifically prohibit "tree houses," the particular tree house in question was built in such an elaborate way that it was to be considered an accessory building. In my opinion, when the circuit court found that the tree house could not be classified as an accessory building, it substituted its own opinion and findings for that of the City.

¶64. Whether the tree house is an accessory structure is a fairly debatable question. The City argues that the circuit court erred in ignoring the "fairly debatable standard" when it decided to overrule the City's findings. "Fairly debatable" is the antithesis of arbitrary and capricious. *Saunders v. City of Jackson*, 511 So.2d 902, 906 (Miss. 1987). If matters before the Mayor and Board of Aldermen can be deemed fairly debatable, then there is no judicial authority to interfere and the action taken by the zoning authorities must be upheld. *Fondren North Renaissance v. Mayor & City Council of Jackson*, 749 So.2d 974, 977 (Miss. 1999).

¶65. The record before us supports the City's argument. The Zoning Commission and the Mayor and Board of Aldermen were presented with arguments by both sides. After it became apparent that an unpopular application of the ordinance was to be the outcome, the board members commented on how difficult their decision was and noted the intense effort to reach a compromise. Based on this, it cannot be said that the City's decision was either arbitrary or capricious.

¶66. Though not critical to a determination of whether the decision was fairly debatable, I note that during the hearings held on July 23, 2002 and August 6, 2002, the Welches were

24

allowed to present lengthy arguments to the governing body. Thus, the fact that it was debated at length further supports a finding that the decision was fairly debatable. No limitation was placed on the Welches and their counsel. Generally, a governing body's decision is not arbitrary, capricious, unreasonable or illegal in circumstances where each side receives a full and complete hearing and is afforded due process. ***Barnes v. Board of Supervisors, DeSoto County***, 553 So.2d 508, 512 (Miss. 1989).

¶67.   Because the circuit court failed to adhere to the proper standard of review, and since the decision by the City was fairly debatable, I would reverse the circuit court's decision and reinstate the City's ruling.  Though I would find this issue to be dispositive, I address the other issues raised.

> II.   Whether the circuit court erred in finding that the Welches were entitled to a special exception/conditional use or to a non-conforming use designation.

¶68.   The circuit court determined the Welches were entitled to either a special exception/conditional use or a non-conforming use. Relying on the zoning ordinance, the City argues that this is an error.

A. Conditional Use/Special Exception

¶69.   "Conditional Use" is defined under § 200 of Clinton's zoning ordinance as follows:

> A land use, which would not generally be appropriate in particular zoning district, but which, with certain restrictions or conditions, would in the judgement of the Mayor and Board of Aldermen, promote the public health, safety, morals, or general welfare of the City and would not adversely affect adjacent property.  A permit granted by the Mayor and Board of Aldermen for the initiation of a conditional use (with necessary restrictions included) will not change the zoning of the property involved and will allow such a use to continue as long as the specific use granted by the conditional use remains the same.  Also referred to as a special exception.

25

¶70. The City contends that the current zoning ordinance limits the granting of a conditional use in R-1 Residential District and that the tree house is not a permitted use or structure as set out in the ordinance. Section 602 provides:

> SECTION 602 - CONDITIONAL USES AND STRUCTURES AS PROVIDED IN SECTION 2405
>
> (a)    Public or quasi-public facilities and utilities in conformance with Section 402 and other regulations of this Ordinance.
> (b)    Child care facilities.
> (c)    Inns or "bed and breakfast inns."

¶71. The circuit court did not acknowledge that these were the only types of structures permitted as a conditional use in an R-1 Residential District. The Welches' structure does not fit any of these allowable special conditions in an R-1 District. The City contends that it had no choice but to reject the request for the conditional use/special exception and that the circuit court erred in ignoring this portion of the ordinance. The City is correct. The decision to deny the conditional use was neither arbitrary nor capricious. Instead, it simply enforced the zoning ordinance.

¶72. Instead of addressing Section 602, the circuit court took note of Section 2405.01 of the City's ordinance, which sets forth the requirements or factors to be considered in granting a special or conditional use request. Those factors, in pertinent part, are also found in ***Barnes v. Board of Supervisors, DeSoto County***, 553 So.2d at 509-10:

> 1)    Does the conditional use increase traffic hazards or congestion?
> 2)    Does the conditional use increase any fire hazards?
> 3)    Does the conditional use adversely affect the character of the neighborhood?
> 4)    Does the conditional use substantially adversely affect the general welfare of the community?

26

¶73. The burden is on the applicants to show by a preponderance of the evidence that they have met the essential elements/factors essential to obtaining the conditional use permit. Id. at 510-11. The circuit court held that there was no evidence in the record that the City considered§ 2405.01 or Barnes. This is plain error since the burden is on the Welches to demonstrate that the tree house complied with each element. There is no indication that the Welches did so. Additionally, according to § 2405.02 of the zoning ordinance, every applicant for a conditional use permit shall submit a site plan. No such plan was submitted in the case sub judice.

¶74. The Welches assert that there is not "one scintilla" of evidence in the record which revealed that the tree house would have adversely affected any of the property owners. Rather, the Welches offered testimony from Scot Welch at the Board meeting that three of the last five houses sold in the Welches' neighborhood sold in five days or less, with the other two residences being sold within four months of being placed on the market for sale. However, the circuit court and the Welches fail to acknowledge that the initial complaint pertaining to the tree house originated from the neighbor across the street. An e-mail from the neighbor to the Mayor is contained in the record. The e-mail stated that several prospective buyers of the neighbor's house made specific comments that the tree house made the property less desirable and detracted from the value. Thus, in my opinion, this evidence in opposition of the tree house is more than a "mere scintilla," and it supports the City's denial of the conditional use permit. *City of Olive Branch Bd. of Aldermen v. Bunker*, 733 So.2d 842, 846 (Miss. Ct. App. 1998). Therefore, I would find that the circuit court erred in reversing the City's decision to deny a conditional use permit.

27

B. Non-Conforming Use

¶75. The circuit court held that the record in the case sub judice contained substantial evidence to justify the approval of a non-conforming use permit.

¶76. A "non-conforming use" is defined in Clinton's current zoning ordinance under § 2200 as:

> Any land, lot, building, structure, or parts thereof existing prior to the enactment of this ordinance, which subsequent to the enactment of this ordinance or amendment thereto, does not conform with the use regulations and/or dimensional regulations of the district in which it is situated, and/or does not comply with any other requirements herein.

¶77. Additionally, § 2200 states that in order to be permitted as a non-conformity, a structure must have been lawful under the prior zoning ordinance and it may not be enlarged upon, expanded or extended. The Welches argue that the tree house was legal under the 1976 zoning ordinance because the construction of the tree house allegedly began in March 1997. The City of Clinton's current zoning ordinance was then amended in April of 1997. Therefore, the circuit court ruled there was sufficient evidence for the City to grant a non-conforming use permit based on the Welches' testimony that the tree house was begun in March of 1997. However, the circuit court failed to acknowledge that even if the tree house was legally constructed, it could not be enlarged upon or expanded. According to the record, it is clear that the tree house began as a platform, which is not a structure in violation of the zoning ordinance. It was then enlarged substantially from April 1997 to 2000. I firmly believe that based on the violation of the prerequisites for a non-conforming use permit, the City properly denied the request.

28

III. Whether the circuit court incorrectly applied the doctrine of equitable estoppel against the City.

¶78. This Court has previously held that the doctrine of equitable estoppel may be applied against the state and its municipalities. *Suggs v. Town of Caledonia*, 470 So.2d 1055, 1057 (Miss. 1985). The following factual elements are a prerequisite to the application of the doctrine: (1) belief and reliance on some representation; (2) change of position, as a result thereof; and (3) detriment or prejudice as a result of the change of position. Id. This Court has long held that the application of the doctrine of equitable estoppel against a municipality is unique. Because a municipality may only act through its minutes, ordinarily the unauthorized acts of one of its officials does not estop a municipality from acting in its governmental capacity. Id. (citing *Lancaster v. City of Columbus*, 333 F. Supp. 1012 (N.D. Miss. 1971); *Reliance Mfg. Co. v. Barr*, 245 Miss. 86, 146 So.2d 569 (1962); *Colle Towing Co. v. Harrison County*, 213 Miss. 442, 57 So.2d 171 (1952); *Am. Oil Co. v. Marion County*, 187 Miss. 14, 192 So. 296 (1939)).

¶79. The circuit court found, contrary to the decision of the City, that the building inspector for the City had granted permission for the Welches to construct the structure in their front yard. Mrs. Welch asserted that she asked the building inspector about the tree house before constructing it, and the building inspector told her that the structure was not in violation of the zoning ordinances. However, there was never a permit issued for the tree house. The inspector is deceased and was not available to contradict the statements of Mrs. Welch. The Welches also argue that on at least two occasions, city building inspectors were on their property and that if the tree house were illegal, they would have raised the issue.

29

¶80. The City argues that the circuit court erred in applying the doctrine of equitable estoppel because there is no mention of granting a permit for the tree house in the City's minutes. Again, I believe that the City is correct because a municipality can speak only through its minutes. Under the reasoning of the circuit court, any city employee could agree to and bind the City to anything and any alleged observation by any city employee would impute knowledge to the City, thereby binding the City by actions or inactions of its employees. The record reveals that the Mayor and Board of Aldermen had no knowledge of these issues prior to the matter being reported to the Zoning Commission in May 2002.

¶81. Moreover, this Court's opinion in *Suggs v. Town of Caledonia*, 470 So.2d 1055 (Miss. 1985), is directly applicable to the case at bar. In *Suggs*, two store owners brought an action to enjoin the town from enforcing a municipal ordinance regarding the sale of beer. The store owner claimed that he acted on the representation of the mayor in locating his store where he did. This Court held that the fact that one store owner relied on the mayor's comments to him regarding the sale of beer did not support the application of the doctrine of estoppel to bar the town from enforcing its ordinance against the store owner. *Id*. at 1507. This Court held that "the unauthorized act of one of its officials does not estop a municipality from acting in its governmental capacity." *Id*. This Court further held that because neither the mayor or board of aldermen of the town were aware that the convenience mart was in violation of a zoning ordinance (being located within 1500 feet of a church), the imposition of the doctrine of equitable estoppel was not appropriate.

¶82. In today's case, the Mayor and Board of Aldermen lacked knowledge of the existence of the tree house, as the Welches were never officially issued a permit and it was never

30

recorded in the City's minutes. When the matter was brought to the attention of the governing body, the Mayor and Board of Aldermen acted in accordance with the ordinances of the city.

¶83.    The circuit court relied on *Koval v. Koval*, 576 So.2d 134 (Miss.1991); *PMZ Oil Co. v. Lucroy*, 449 So.2d 201 (Miss. 1984); *Town of Florence v. Sea Lands, Ltd.*, 759 So.2d 1221 (Miss. 2000) and *Walker v. City of Biloxi*, 229 Miss. 890, 92 So.2d 227, 229 (1957), to support its opinion.  However, the circuit court's reliance on these cases is misplaced. Equitable estoppel does not apply to municipalities unless there has been official action by the governing body.  The Court in *Koval* applied the doctrine of equitable estoppel to enforce an oral contract between a son and his parents to convey land. The Court in *PMZ Oil Co.* applied the doctrine of equitable estoppel against a developer holding that the developer could not construct town homes because it was a violation of a unrecorded covenant allowing only single family dwellings to be built on the lots. *Koval* and *PMZ Oil* Co. do not deal with equitable estoppel as applied to a municipality and are clearly not applicable to the case at bar.

¶84.    Town of Florence and Walker do involve the application of the doctrine of equitable estoppel as pertaining to municipalities. In *Town of Florence*, Sea Lands bought a 6.5 acre tract of land that was originally zoned for R-2. Sea Lands planned to build a multi-family dwelling on the property. The Planning and Zoning Commission then held a hearing to re-zone the property back to  R-1. Sea Lands objected to the re-zoning because it had not been notified of the hearing. This Court applied the doctrine of equitable estoppel against the

31

Town finding that there was reliance on the R-2 zoning which had been in effect for approximately nine years prior to Sea Lands' purchase of the property.

¶85.    ***Walker v. City of Biloxi*** is factually distinguishable from the case at bar. In ***Walker***, the owner of a commercial building was charged with operating a business in a residentially zoned neighborhood in violation of the city ordinance. The business owner argued that the city ordinance was void because the municipal authorities did not comply with the procedures in adopting zoning laws. This Court upheld the ordinance in favor of the City and applied the doctrine of equitable estoppel against the individual. This Court held that because houses were being constructed under this ordinance and the general public had recognized the ordinance and acted pursuant to the ordinance, the ordinance was upheld in favor of the City.

¶86.    These cases are distinguishable from the case at bar in that each party relied on a zoning ordinance, which is an official action of the city and the planning and zoning commission. In the present case, the Welches are claiming they relied on an individual, who clearly cannot speak on behalf of the city. As previously stated, a city can only act through its minutes and official acts. Here, there was no record of a permit for the tree house recorded with the city, and there was no record on the City's official minutes did not reveal that the City had notice of the tree house's presence in the Welches' front yard. Therefore, I conclude that the circuit court incorrectly applied the doctrine of equitable estoppel against the City.

    IV.    Whether the "no recommendation" vote by Clinton's Zoning and Planning Commission violates Clinton's zoning ordinances and is an arbitrary, capricious and unreasonable act.

¶87. Section 2411.03 of the City's current zoning ordinance entitled "Public Hearings Before the Planning Commission" states in pertinent part that only in case of a tie vote may an application be forwarded to the Mayor and Board of Aldermen "without recommendation." At the Zoning and Planning Commission, a vote was made to pass this issue to the Mayor and Board of Aldermen "without recommendation" because the Commission felt that there was insufficient time to thoroughly examine all of the material since the Welches presented the Commission with their application only minutes before the meeting began.

¶88. The City argues that the "no recommendation" vote did not harm the outcome of the Welches' case and that the Mayor and Board of Aldermen had all of the information which was presented to the Planning and Zoning Commission, the 75 page transcript from the public hearing, plus the necessary time to review it. The City further asserts that the Commission's recommendation is only advisory in nature and nothing in the zoning ordinance or statutes binds the City based on the recommendations of the Commission. Furthermore, the City contends that the Board has the final authority concerning zoning matters.

¶89. The Welches contend that the "no recommendation" vote by the Commission was arbitrary and capricious, and they assert that because of this vote, their procedural and substantive due process and equal protection rights under the Fifth and Fourteenth Amendments of the United States Constitution and Art. 3, §§ 14 and 17 of the Mississippi Constitution have been violated. The Welches maintain that they were not treated like all

other applicants similarly situated under Clinton's zoning ordinance procedures and substantive requirements. However, I would find that this argument is without merit.

¶90. The Welches offer no evidence demonstrating that their equal protection rights were violated. To the contrary, it is the contention of the City that a "no recommendation" vote has been utilized in other similar circumstances, as illustrated in the City's minutes. As stated in *Thrash v. Mayor and Comm'rs of City of Jackson*, 498 So.2d 801 (Miss 1986), "[I]t is the City which is vested with final authority for determining whether its procedural requisites have been met or, if it pleases, waiving them." *Id*. at 807 (emphasis added). As to the due process argument, this Court in *Thrash* went on to hold:

> [W]e consider it beyond debate that the essence of the due process right, if any, guaranteed to Thrash and the other Objectors is reasonable advance notice of the substance of the re-zoning proposal together with the opportunity to be heard at all critical stages of the process. The record abundantly reflects that the objectors in fact had ample advance notice. They appeared before the Zoning Hearing Committee . . . personally and through counsel, and were give full opportunity to present any and all matters they wished.

*Id.* at 808. Today's case is no different from the due process issue addressed in *Thrash*. The Welches were given ample notice of the hearing and were given the opportunity to be heard at all critical stages during the hearing, both personally and through counsel. Therefore, the "no recommendation" vote did not in any way harm the outcome of the Welches' case, and their procedural and substantive due process rights were not violated.

¶91. For these reasons, I am convinced that the circuit court erred in reversing the City's decision. The evidence in the record supports the Board's decision to classify the tree house as an accessory building and to deny a conditional use variance was neither arbitrary and capricious nor was it unsupported by substantial evidence, having been fairly debated in a

public forum. I fervently believe that this Court should reverse the circuit court's judgment and reinstate the City's decision finding the tree house in violation of the zoning ordinance. Because the majority holds otherwise, I respectfully dissent.

**WALLER, P.J., JOINS THIS OPINION.**


**SMITH, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶92.    I agree with the majority that the City is equitably estopped from requiring removal of the tree house and for that reason I concur in the affirmance of the circuit court's judgment.  However, I do not join the majority opinion since it decides a constitutional issue which does not have to be addressed.

¶93.    The classification of property for zoning purposes is a legislative rather than a judicial matter and there is a presumption of validity of a governing body's enactment or amendment of a zoning ordinance.  ***Petition of Carpenter v. City of Petal***, 699 So.2d 928, 932 (Miss. 1997).  The majority correctly points out that a "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." ***Connally v. General Constr. Co.***, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926).  However, this is not the case here.  The terms are not so vague that men of common intelligence must guess at its meaning.

¶94.    The majority's decision is based on its belief that the terms are vague and a person would not know if a birdhouse, mailbox or flowerbed is included within the ordinance's

35

prohibition. I believe the majority is stretching the definitions of "structure" and "use"to include things not intended to be within the ordinance's prohibitions. A common sense reading of those definitions would clearly inform the reader of what is prohibited under the ordinance. The definition of structure is "anything constructed or erected, the use of which requires a fixed location on the ground, or attached to something having a fixed location on the ground". Any person would be able to determine that a tree house falls within this definition and would not have to guess at its meaning. The majority also points out that a decision by the Mayor and Aldermen will not be set aside unless it is found to be arbitrary and capricious. *Sanderson v. City of Hattiesburg*, 249 Miss. 656, 163 So. 2d 739, 741 (1964). I find it very unlikely that a decision to prohibit flowerbeds, mailboxes or birdhouses would be upheld under this standard. These are all items which routinely appear in a person's front yard.

¶95. "An enactment is void for vagueness if its prohibitions are not clearly defined." *J&B Entertainment, Inc. v. City of Jackson*, 152 F.3d 362, 367 (5th Cir. 1998). To determine whether a statute is vague "we view the law from the standpoint of a person of ordinary intelligence." *Id*. The zoning ordinance in question here clearly defines what is prohibited and there is no guessing as to what qualifies as a structure. A tree house clearly is a structure prohibited by the ordinance, and a person of ordinary intelligence would be able to determine what is prohibited by the ordinance.

¶96. The application of the definitions "structure" and "use" are not unconstitutionally vague.

¶97. For these reasons, I respectfully dissent.

**WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., JOIN THIS OPINION IN PART.**

## APPENDIX A

Following is a review of a hypothetical application of the Ordinance from the point of view of a citizen wishing to put in the front yard new Bermuda sod, a sprinkler system, a brick flower bed, a new mailbox, a bird house, a tree house, and install a swimming pool. This hypothetical application illustrates the Ordinance's vagueness problem.

The City: Under section 401.5 of the Ordinance, you are in violation of the law if you have an "accessory building or use" in your front yard.

Citizen: What is the definition of an "accessory building or use?"

The City: We do not currently have a definition of "accessory building or use." We used to, but we removed it from the Ordinance.

Citizen: Then how will I know what is an "accessory building or use?"

The City: You must look at the definition of "accessory structure or use," which you will find in section 201.

Citizen: That doesn't seem fair, since I would have no way to know that I must look in a different section of the Ordinance under the definition of something else. However, if I happened to look there, what definition would I find?

The City: It is "any detached structure or use which is subordinate or incidental to the main building or dominant use of the lot or premises, excluding driveways, sidewalks, and fences."

Citizen: You say I am in violation of the law if I have in my front yard either a
     (1) **detached structure**, or
     (2) **a use**.
What is a "detached structure?"

The City: We do not have a definition of "detached structure," but we have a definition of "**structure**," which is "***anything constructed or erected, the use of which requires a fixed location on the ground, or attached to something having a fixed location on the ground***."

Citizen: So, if it is (1) constructed or erected, and it (2) is attached to the ground, then I am in violation of the Ordinance?

The City: If we say so. But we handle these things on a case-by-case basis.

Citizen: But that definition would apply to my proposed swimming pool, my sprinkler system (it's constructed and attached to the ground), my mailbox (it's constructed and attached to the ground), my bricked up flower bed (it's constructed and attached to the ground), my bird house (it's constructed and attached to a tree, which is attached to the ground), and my tree house (same thing). How do I know where the City draws the line?

The City: You don't. However, we will allow the swimming pool, sprinkler system, mailbox, flower bed and bird house. We will not allow the statue of liberty or the tree house.

Citizen: What about the second thing that is prohibited; "use;" what is that?

The City: We do have a definition of "**use**." It is, "***The specific purpose for which land or a building is designed, arranged, intended, or for which it is or may be occupied or maintained. . . .***"

Citizen: You mean you prohibit any "use" in my front yard? That is, you prohibit ANYTHING that is the "specific purpose for which the land is designed arranged, intended, or for what it is or may be occupied or maintained?" Wouldn't that apply to putting down new sod in my front yard? It seems to me that a front yard is intended to be used for things like planting sod and flowers – things the "specific purpose for which the land is designed or intended."

The City: That may be what it says, but that's not the way we enforce it. We will allow you to go ahead and plant the sod and keep the flowers.